**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **SOFLAC Associates, LLC, et al.,**<br>*Plaintiffs,*<br>**v.**<br>**Nathan Isen, et al.**<br>*Defendants.* | : | **Civil Action No. 26-cv-27124-DSL** |

**DEFENDANT DANE FINE ART LLC'S**
**MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Dane Fine Art, LLC, by and through its undersigned counsel, hereby moves to dismiss the Complaint filed by Plaintiffs SOFLAC Associates, LLC, RMP Investments, LLC, McAndrew Phillips & Company 401K Plan, Judy Perlman, and Richard M. Perlman [D.E. 1-1], for the reasons set forth in the accompanying Memorandum of Law in support thereof.

Respectfully submitted,

/s/Eduardo F. Rodriguez_________________
Eduardo F. Rodriguez (FL Bar No. 036423)
EFR Law Firm
2121 Ponce De Leeon Blvd., Ste. 400
Coral Gables, Florida 33134
(305) 340-0034
eddie@efrlawfirm.com

Benjamin A. Garber, Esquire
(*pro hac vice* forthcoming)
Justin S. Brooks, Esquire
(*pro hac vice* forthcoming)
Three Logan Square
1717 Arch Street, Fifth Floor
Philadelphia, PA 19103
(215) 568.2000
bgarber@kleinbard.com
jbrooks@kleinbard.com

*Attorneys for Defendant Dane Fine Art LLC*

Dated: October 17, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **SOFLAC Associates, LLC, et al.,**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**Nathan Isen, et al.**<br><br>*Defendants.* | : | **Civil Action No. 26-cv-27124-DSL** |

**DEFENDANT DANE FINE ART, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Dane Fine Art, LLC ("Dane") by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiffs SOFLAC Associates, LLC, RMP Investments, LLC, McAndrew Phillips & Company 401K Plan, Judy Perlman, and Richard M. Perlman.

## Table of Contents


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 8

A. Plaintiffs Do Not State a Claim for Unjust Enrichment. ........ 8

B. Plaintiffs Fail to State an Aiding and Abetting Fraud Claim. ........ 11

C. Plaintiffs Do Not State a FDUPTA Claim. ........ 14

D. Plaintiffs Fail to Allege a RICO Enterprise or Pattern of Racketeering Activity and do not Satisfy Continuity Requirements. ........ 15

1. Plaintiffs Fail to Allege Causation. ........ 16

2. Plaintiffs Fail to Plausibly Allege a RICO "Enterprise." ........ 17

3. Plaintiffs Fail to Allege a "Pattern of Racketeering Activity." ........ 18

4. Plaintiffs do not Satisfy RICO's Continuity Requirements ........ 23

5. Because they Have Stated no Underlying RICO Violation, Plaintiffs' Conspiracy Claim also Fails. ........ 24

E. Liability Under Section 772.103, Florida Statutes ........ 24

F. Plaintiffs do not State a Claim for Civil Conspiracy. ........ 25

V. CONCLUSION ........ 25

## Table of Authorities

### Cases


*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ........................ 19, 20

*Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007)................ 20, 25

*Ambrosia Coal & Constr. Co. v. Page Morales*, 482 F.3d 1309 (11th Cir. 2007)....... 21

*Artsen* 792 F. Supp. 1358 (S.D. Fla. 2025)................................................................ 24

*Aschcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*Banc of America Securities LLC v. Stott*, No. 04-810086, 2005 WL 8156027, (S.D. Fla Aug. 30, 2005) ................................................................................. 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 7

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1346 (11th Cir. 1997) 8, 12

*Cisneros v. Petland, Inc.*, 972 F.3d 1204 (11th Cir. 2020)........................15, 20, 23, 24

*Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383 (Fla. Dist. Ct. App. 1997)........................................................................................... 8

*De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274 (S.D.N.Y. 2013).................. 20

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332 (11th Cir. 2025) ... 7, 8

*Extraordinary Title* [*Servs., LLC v. Fla. Power & Light Co.*, 1 So.3d 400 (Fla. Dist. Ct. App. 2009)]............................................................................................... 11

*Garcia v. Character Tech.*, 785 F. Supp. 3d 1157 (M.D. Fla. 2025)........................... 11

*Greenfield v. Manor Care, Inc.*, 705 So. 2d 9261 (Fla. Dist. Ct. App. 1997) ................ 8

*Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................. 2

*H.J. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .................................. 23

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815 (7th Cir.1991) .................... 24

*Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004)............ 23

*Jerue v. Drummon Company, Inc.*, No. 8:17-cv-587, 2017 WL 10876737 (M.D. Fla. Aug. 17, 2017) ................................................................................................. 10

*Johnson v. Catamaran Health Solutions, LLC*, 687 Fed. App'x 825 (11th Cir. 2017)11

*Karpel v. Knauf Gips KG*, No. 21-24168, 2022 WL 4366946 (S.D. Fla. Sept. 21, 2022) ............................................................................................................ 9, 10

*Kopel v. Kopel*, 229 So. 3d 812 (Fla. 2017) .................................................................. 8

*Marrache v. Bacardi, U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021) .......... 10

*Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290 (S.D. Fla. 2017) .......... 10

*Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d. 1321 (M.D. Fla. 2019) .......... 22

*Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158 (11th Cir. 2025) .......... 11, 12, 13

*Pop v. LuliFama.com LLC*, 145 F.4th 1285 (11th Cir. 2025) .......... 14, 15

*Prou v. Giarla*, 62 F. Supp. 3d 1365 (S.D. Fla. 2014) .......... 25

*Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340 (11th Cir. 2016) .......... 2, 16

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997) .......... 22

*Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802 (11th Cir. 1999) .......... 8

*Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir.1994) .......... 24

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329 (11th Cir. 2012) .......... 8, 9

*United States v. Baker*, 19 F.3d 605 (11th Cir. 1994) .......... 22

**Statutes**

18 U.S.C. § 1341 .......... 19

18 U.S.C. § 1343 .......... 19

18 U.S.C. § 1957 .......... 22

18 U.S.C. § 1961 .......... 19

18 U.S.C. § 1962 .......... 19

18 U.S.C. § 1964 .......... 15

18 U.S.C. § 2318 .......... 20

Fla. Stat. § 772.103 .......... 24

Fla. Stat. § 501.204(1) .......... 14

**Rules**

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 7

## I. INTRODUCTION

The overwhelming bulk of Plaintiffs' complaint recounts an intricate fraud scheme perpetuated by non-parties Leslie Roberts and Miami Fine Art Gallery ("MFAG"). Plaintiffs allege that Roberts convinced them that he had a connection at Andy Warhol's Foundation through which he could acquire original Warhol art at below-market prices. Based on this misrepresentation, which Roberts perpetuated through fabricated invoices, a fictitious Foundation representative, and phony appraisers, Roberts sold Plaintiffs a series of forged works through MFAG.

Having already sued Roberts and MFAG in a separate (and settled) lawsuit years ago, Plaintiffs now bring intentional tort and statutory claims against Defendants based on allegations that they supplied the forged artwork. But Plaintiffs never interacted with Dane directly, plead no allegations tying their injuries to Dane's conduct instead of Roberts' or MFAG's, and do not credibly plead that the artwork supplied to MFAG by Dane is the *same* art that MFAG sold to them. Their pleading is otherwise legally defective in a number of respects.

Because Plaintiffs do not allege they conferred a benefit on Dane, they have not stated a claim for unjust enrichment. Though they purport to bring claims sounding in fraud, they identify no particular misrepresentation by Dane and fail to plead with the requisite particularity. And their conspiracy claim lacks facts demonstrating that Dane acted with the purpose of harming them. Indeed, there are no facts plead in the Complaint indicating that Dane was even aware of their existence. Likewise, Plaintiffs do not plead *any* interactions between Dane and any other Defendant—let alone facts that support a wide-ranging conspiracy—and do not

differentiate between the discrete pieces Dane provided from other Defendants, lumping all purchases together even though it is clear that Dane only provided a subset of the art Plaintiffs claim they purchased from MFAG for $6.7 million. Selling art to Roberts does not establish that Dane joined a broader conspiracy with other art suppliers.

Plaintiffs' attempt to bring claims under federal and state racketeering laws is particularly specious. "RICO's enchantment, like the siren's song, has again drawn another crew of spellbound plaintiffs foundering against the rocks." *Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009). While the draw of the statute is understandable for Plaintiffs eager to maximize damages, RICO's requirements are stringent, and "there is no reason to think that Congress intended the law to provide treble damages in every conceivable case of corporate fraud." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016). Here, Plaintiffs' claim is deficient in multiple respects. First, Plaintiffs do not allege an actionable enterprise or a series of predicate racketeering acts. More fundamentally, these claims collapse because they fail to plead the element of causation. Nothing in the Complaint indicates Plaintiffs' injuries were proximately caused by Dane, under the rigorous causation standard applicable to RICO claims, rather than by Roberts or MFAG. Finally, Plaintiffs do not satisfy RICO's continuity requirements.

At bottom, the Complaint substitutes factual allegations of tortious conduct with a theory of guilt by association. While they may present a compelling narrative of the non-parties' wrongdoing, Plaintiffs plead no facts to plausibly connect this

wrongdoing to Dane. A mere commercial relationship where Dane sold Warhols—along with other art—to MFAG and Roberts does not come close to pleading that Dane was a participant in Roberts' scheme to defraud or even the supplier of any fraudulent art that Plaintiffs purchased from MFAG.[1] For these reasons, this action should be dismissed as to Dane for failure to state a claim.

## II. BACKGROUND

On August 29, 2024, Plaintiffs filed a lawsuit against Leslie Roberts, Miami Fine Art Gallery LLC ("MFAG"), and Alex Herman in the Circuit Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida (the "Roberts Action"). Case No. 2024-016550-CA-01. Most of Plaintiffs' current allegations focus on Roberts and MFAG—not Dane—and duplicate Plaintiffs' prior allegations.

The Amended Complaint in the Roberts Action alleges that Roberts represented that he had a relationship with the Andy Warhol Foundation for the Visual Arts, Inc., enabling him to acquire and sell Richard and Judy Perlman works by Andy Warhol at a discount. Exhibit 1, Roberts Action Am. Compl. ¶ 40. Under this pretense, Roberts and MFAG sold works of art purportedly made by Warhol to the Perlmans. *Id.* ¶ 41–42. After several of these sales, Roberts proposed that he and the Perlmans form a joint venture through which they would purchase Foundation art and split the proceeds from MFAG's resale of the works to museums, collectors, and galleries. *Id.* ¶ 45. The Perlmans agreed and formed limited liability company

---

[1] While Dane treats the Complaint's properly plead allegations as true for the purposes of this Opposition – as it must – Defendants' separate Motion to Sever Claims and Transfer explains that Plaintiffs *know* the art that Dane sold MFAG was authentic.

SOFLAC Associates, LLC with MFAG. SOFLAC paid millions of dollars to fund acquisitions that Roberts represented as originating from the Foundation. *Id.* at ¶¶ 47–58.

To convince Plaintiffs that they were dealing with the Foundation, Roberts posed as a "fictitious character" named Alex Herman, who identified himself as a Foundation employee, in email and telephone correspondence with the Perlmans related to Foundation transactions. *Id.* ¶¶ 64–80. Roberts then sent forged invoices purportedly from the Foundation, but the Perlmans' funds were not actually sent to the Foundation; instead, Roberts and MFAG "stole" them. *Id.* ¶¶ 59–60.

When Judy Perlman attempted to sell some of the works she had purchased from Roberts and MFAG to Christie's Auction House, Christie's expressed concerns about their authenticity. *Id.* ¶ 81. Plaintiffs confronted Roberts, but he maintained that the works were authentic and tried to discredit Christie's concerns. *Id.* ¶ 82. He also sent individuals purporting to be appraisers from Phillips to evaluate the works, but Phillips denied a connection to those individuals. *Id.* ¶¶ 82, 85, 87. Roberts explained the lack of documentation connecting Herman to the Foundation by claiming Herman was a foreign consultant. *Id.* ¶ 83.

Plaintiffs brought breach of contract, breach of fiduciary duty, unjust enrichment, Florida RICO, and other claims. *Id.* ¶¶ 92–202. Following a confidential settlement, the parties stipulated to the dismissal of the Roberts Action on January 12, 2026. Exhibit 2. Plaintiffs' current Complaint repeats the allegations against Roberts and MFAG nearly verbatim. *See* Compl. ¶¶ 56–72, 91, 94–109, 113–120. But

Plaintiffs now allege that Defendants helped them source the Warhols the Perlmans purchased. *Id.* ¶ 48–54, 73–88, 92, 93, 110–12.

Plaintiffs allege that Dane—as controlled by Defendant Nathan Isen—"invoiced and sold forged works to MFAG, and within days or weeks, MFAG sold those same forged works to Plaintiff." *Id.* ¶ 73. Plaintiffs plead no specific facts—such as identifying specific monikers, alphanumeric codes, and numbering systems used by auction houses, galleries, and collectors—that would establish that the art MFAG purchased from Dane is the same art MFAG sold to the Perlmans. Instead, they allege that Dane invoiced Roberts for multiple Warhol works and conclusorily assert that these same works were sold to the Perlmans shortly thereafter. *Id.* ¶¶ 74–84. As corroborating details, they only offer facts as to the sale of art to MFAG. For example, in connection with the sale of a "Warhol Queen Margrethe II," they allege that Isen texted Roberts that he had "the queen all ready for u in Boca [Raton, Florida] for pick up." *Id.* ¶ 74. And in connection with the sale of a "Sarah Bernhardt," Isen emailed MFAG: "Warhol Sarah Bernhardt – we need to get out of Hock." *Id.* ¶ 77.

The Complaint further alleges that "[e]ach Defendant knew that the artworks they sold to MFAG were forgeries and that the corresponding invoices and authentication materials were fabricated" and that "Dane and Isen knew because they manufactured at least some of them." *Id.* ¶ 92. They provide no corroborating, factual detail on these authentication materials or their supposed manufacture by Dane. They then allege that "[e]ach Defendant … knew that MFAG was fraudulently selling the forgeries to collectors as authentic Warhols that came from the

Foundation," *id.* ¶ 93, but offer no facts substantiating this supposed knowledge. The Complaint only pleads details concerning communications regarding Dane's sale of art *to* MFAG. It pleads no facts on Dane knowledge of or participation in MFAG's subsequent sale to the *Perlmans*. Nor does it reference communications between Dane and MFAG as to MFAG's subsequent sales to any other private individuals.

Plaintiffs also allege that Isen "attempted to stop Roberts from publicly auctioning one of the" works he had acquired from Dane, rankly speculating that he objected "because he did not want the work to be subjected to the auction house's independent expert scrutiny." *Id.* ¶ 93.

Regarding Defendants' involvement in Roberts' scheme, the Complaint alleges in conclusory terms that "Dane and Isen knew they were supplying forgeries and providing false documentation." *Id.* ¶ 111. And "[e]ach Defendant knowingly engaged in and furthered this fraud, performing the function within the enterprise required to deceive Plaintiffs into paying millions of dollars for forged artwork." *Id.* ¶ 112.[2]

The Complaint is also notable for what it does not do: (1) It fails to plead any interactions between Dane and any other Defendant; (2) it fails to plead that Dane actually had knowledge of the Herman persona or its use by Roberts to dupe Plaintiffs; and (3) it fails to allocate the Perlmans' alleged $6.7 million spend by

---

[2] In an attempt to bolster their boilerplate and amorphous allegations of fraud and conspiracy, Plaintiffs also recount allegations of unrelated wire fraud that are more than a decade old and other purported fraud "on information and belief" as to Nathan Isen. *E.g.* Compl. ¶¶ 42–43, 46; *see also id.* ¶¶ 44–45, 47. These allegations are poorly plead and in no way relate to the Roberts' fraud that forms the basis of this and Plaintiffs' prior lawsuit.

Defendant, improperly suggesting Dane participated in supplying the entire set of art.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1346 (11th Cir. 2025) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "allegations must rise beyond a 'speculative level' to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In evaluating a complaint's sufficiency, a court's analysis is guided by the following principles: "(1) the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions" and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

A heightened pleading standard applies to fraud claims. "In alleging fraud …, a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A complaint may satisfy this standard by "illustrating the following: (1) precisely what statements were made in the documents or oral representations or what omissions were made"; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; (4) what the defendants obtained as a consequence of the fraud.'" *Savencia*, 148 F.4th at

1346 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1346, 1371 (11th Cir. 1997)).

## IV. ARGUMENT

### A. Plaintiffs Do Not State a Claim for Unjust Enrichment.

Unjust enrichment is an "equitable claim," "based on a legal fiction created by courts to imply a 'contract' as a matter of law," in other words, a "quasi-contract." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. Dist. Ct. App. 1997)). This claim requires the following elements:

> (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Id.* at 805 (citing *Greenfield v. Manor Care, Inc.*, 705 So. 2d 926, 930–31 (Fla. Dist. Ct. App. 1997), *receded from on different grounds in Beverly Enterprises-Florida, Inc. v. Knowles*, 766 So.2d 335, 336 (Fla. Dist. Ct. App. 2000)). This first element requires that the plaintiff "directly confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). That does not exist here.

In *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012), the court considered a Florida-law unjust enrichment claim related to an alleged fraudulent concealment. The plaintiffs had purchased homes from Ryland next to land that "was used as a bombing range during World War II and remain[ed] laden with unexploded bombs, ammunition, ordnance, and related chemicals." *Id.* at 1331. They were unaware of these issues, but the homes lost market value when the issues became

public. *Id.* Ryland had purchased the homes from other entities, including Terrabrook, which marketed Ryland's homes and received a portion of gross sales of each lot. *Id.* at 1331–32.

Plaintiffs brought claim for unjust enrichment against Terrabrook, contending that it had conferred a benefit because "Ryland was merely a pass-through conduit required to deliver" a fee to Terrabrook." *Id.* at 1337. The court was "unconvinced" by the plaintiffs' theory, reasoning that the arrangement "did not change the fact that Ryland, not the [p]laintiffs, conferred the benefit on" Terrabrook. *Id.* at 1337.

Here too, Plaintiffs conferred no direct benefit on Dane. Instead, the Complaint repeatedly alleges payments made to MFAG. And as alleged, MFAG entered agreements with Dane for the purchase of artwork. So MFAG, not Plaintiffs, conferred benefits on Dane. In *Virgilio*, it was not dispositive that Ryland's payments to Terrabrook were contractually dependent on the home sales at the center of the plaintiffs' claims: that arrangement "did not change the fact that Ryland, not the [p]laintiffs, conferred the benefit on" Terrabrook. 680 F.3d at 1337. Here, the Complaint lacks even a contractual link. Instead, it alleges two separate sets of agreements among different parties. As such, it fails to identify circumstances warranting the creation of an implied contract between Plaintiffs and Dane. *See also Karpel v. Knauf Gips KG*, No. 21-24168, 2022 WL 4366946, at *8 (S.D. Fla. Sept. 21, 2022) ("The [p]laintiffs' status as subsequent purchasers leads the Court to conclude that their unjust enrichment claims must fail. The [p]laintiffs conferred no direct benefit on the [d]efendants."); *Jerue v. Drummon Company, Inc.*, No. 8:17-cv-587,

2017 WL 10876737, at *14 (M.D. Fla. Aug. 17, 2017) (dismissing unjust enrichment claim where "Plaintiffs did not purchase their properties from the Defendants" so had not "plausibly alleged that they transferred money, property, or some other benefit to the Defendant").[3]

Although direct contact is not required for a "direct benefit to be conferred," *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1307 (S.D. Fla. 2017), unjust enrichment only lies "where the normal course of conduct *required* plaintiffs to confer benefits upon defendants through intermediaries." *Karpel*, 2022 WL 4366946, at *8. Plaintiffs plead no fact tying the benefit they conferred on MFAG to one allegedly received by Dane. That is, they do not allege that Dane's sales to MFAG were conditioned on subsequent sale to the Perlmans or that MFAG was a mere conduit for Dane's receipt of Plaintiffs' funds. To the contrary, the Complaint describes in detail Roberts' efforts to induce Plaintiffs' purchases but lacks similar allegations directed at Dane.

Courts have consistently dismissed unjust enrichment claims involving a like degree of separation between the defendant and the benefit allegedly conferred. *See, e.g.*, *Marrache v. Bacardi, U.S.A., Inc.*, 17 F.4th 1084, 1090, 1102 (11th Cir. 2021) (plaintiffs did not state an unjust enrichment claim based on their purchases of gin where they had allegedly "purchased bottles of Bombay from Winn-Dixie, not Barcardi" and thus had "failed to allege that [they] conferred a direct benefit to

---

[3] Plaintiffs' claim is especially weak because they have not plausibly plead facts showing that the art MFAG purchased from Dane is the same art it sold to them.

Bacardi"); *Johnson v. Catamaran Health Solutions, LLC*, 687 Fed. App'x 825, 830 (11th Cir. 2017) ("Under their unjust enrichment theory, the Johnsons say they conferred a benefit on Stonebridge by paying membership fees to Catamaran, who in turn paid premiums to Stonebridge. However, even if Stonebridge ultimately retained a portion of the Johnson's membership payments, *Extraordinary Title*…and *Kopel*…indicate [ ] the Johnsons conferred (at best) an indirect benefit on Stonebridge.").

The circumstances here fit neatly with this line of precedent: because Plaintiffs did not purchase the allegedly forged works from Dane, and MFAG was not merely an intermediary required to pass benefits through to Dane, Plaintiffs state no unjust enrichment claim against Dane.

**B. Plaintiffs Fail to State an Aiding and Abetting Fraud Claim.**

A claim for aiding and abetting fraud requires: "(1) the existence of an underlying fraud, (2) that the defendant had knowledge of the fraud; (3) that the defendant provided substantial assistance to advance the commission of fraud." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025). "[S]ubstantial assistance" requires that "the defendants 'action, or inaction, was a "substantial factor" in causing the underlying violation.'" *Garcia v. Character Tech.*, 785 F. Supp. 3d 1157, 1175 (M.D. Fla. 2025).

To state this claim, Plaintiffs must satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires them to allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making

(or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Banc of America Securities LLC v. Stott*, No. 04-810086, 2005 WL 8156027, at *6 (S.D. Fla Aug. 30, 2005) (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). They fail to plead this claim with the requisite particularity.

The underlying violation alleged here is fraud. Compl. ¶ 127. Plaintiffs claim that Roberts and MFAG perpetrated their fraudulent scheme through a series of misrepresentations. Compl. at ¶ 128a–h. But the Complaint does not allege with particularity how Dane "assist[ed]" or "help[ed] conceal" any of the non-parties' misrepresentations. *See Otto Candies*, 127 F.4th at 1183. Dane is not alleged to have played any part in their fabrications about connections to the Foundation. And to the extent that Plaintiffs seek to connect Dane's conduct to Roberts' misrepresentation that the works were authentic Andy Warhols, their Complaint lacks particularity as to how Dane helped mislead them. They simply allege that Defendants "suppl[ied] forged works, fabricat[ed] provenance documents and invoices, and provid[ed] false authentication documents." Compl. ¶ 135. Through these general allegations, Plaintiffs do not even plead that Dane had actual knowledge of the fraud. They do not plead that that Dane was aware of the Herman persona or other tactics Roberts used to convince the Perlmans to purchase art claimed to be forged. Plaintiffs even qualify their claims by conceding that Defendants may *not* have actually known of Roberts' fraud, instead saying "or *had reason to know* that the works, documentation,

or services they supplied would be used to misrepresent forgeries to collectors as authentic Warhol works." Compl. ¶144 (emphasis added). Such constructive knowledge does not plead and aiding and abetting claim under Florida law. *See Otto Candies*, 127 F.4th at 1177.

Nor do Plaintiffs do plead "precisely what statements" or oral representations were made about Dane's art "in what documents" by Dane; do not plead that *they* received them; do not plead "the time and place" or each statement; do not identify the contents of such "fabricated provenance documents" or "invoices"; and do not explain how such undentified statements "misled the [P]laintiffs" or what Dane "obtained as a consequence of the fraud." Indeed, the Complaint says nothing about what dollar amount Dane sold their art to MFAG for, and thus, what they "obtained."[4] The only specific allegations pertain to the representations Roberts made to Plaintiffs about the art *MFAG* sold, without adequately establishing it as the same art MFAG bought from Dane. In the absence of this specificity and adequately connecting Dane's statements to the Roberts' fraud, Plaintiffs do not state an aiding and abetting claim. *E.g. Banc of America,* 2005 WL 8156027, at *6 (particularity standards were not satisfied and abetting fraud claims were not pleaded were plaintiff "allege[d] that

[4] While the Court need not consider this fact to dismiss under Rule 12(b)(6), as set forth in Dane's separate Motion to Sever, Plaintiffs have this information. They did not plead it because Dane acquired and sold its Warhols to MFAG at market rate prices for legitimate works because that is what they were: it did not significantly profit and was never unjustly enriched.

[defendants] Marvin and Quinn communicated extensively, [but] she fails to state exactly what Marvin said to Quinn or when the two communicated").[5]

### C. Plaintiffs Do Not State a FDUPTA Claim.

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Where a claim asserted under FDUPTA "sounds in fraud," the pleading "must comply with [Federal] Rule [of Civil Procedure] 9(b)'s particularity requirement." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1294 (11th Cir. 2025). The Complaint's allegations center on MFAG's misrepresentations about the source of artwork and accordingly sound in fraud, so their FDUPTA claim must comply with Rule 9(b). *Id.* at 1295 (explaining that a claim sounds in fraud if its underlying allegations "closely track the elements of common law fraud"—"[a] false representation of a material fact made by one who knew that it was false, made to one who did not know that it was false, with intent to deceive such person and to influence his action.") (internal quotations omitted).

Plaintiffs allege that Defendants engaged in unfair and deceptive practices "including knowingly and intentionally inducing Plaintiffs to make payments to acquire inauthentic artworks and trafficked forged works through a coordinated

---

[5] Here, Plaintiffs only plead the most vague and generic allegations about Dane's fabrication of invoices and authentication materials – with no specificity – and none of the few pleaded communications between Dane and Roberts concern the misrepresentations Roberts allegedly made to the Perlmans. *E.g.* Compl. ¶¶ 74, 92.

scheme," arguably pleading the core elements of a FDUPTA claim.[6] Compl. ¶ 149. But they do not identify any particular statements or actions by Dane that so induced them. *See Pop*, 145 F.4th at 1296 (explaining that, to satisfy Rule 9(b), a FDUPTA claim sounding in fraud "must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." (internal quotations omitted)). Thus, they have not alleged that a deceptive act by Dane *caused* their injuries and do not state a claim under FDUTPA against Dane.

### D. Plaintiffs Fail to Allege a RICO Enterprise or Pattern of Racketeering Activity and do not Satisfy Continuity Requirements.

Plaintiffs allege that Defendants violated 18 U.S.C. § 1964(c) and (d), provisions of the Racketeer Influenced and Corrupt Organizations act (RICO). Compl. ¶ 170. To plead a civil RICO claim, a plaintiff "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

---

[6] *E.g. YMD Records, LLC v. Ultra Enteprises, Inc.*, 361 F. Supp. 3d 1258, 1267 (S.D. Fla. 2019) (recognizing that the elements required to state a claim under FDUPTA are "(1) a deceptive or unfair practice; (2) causation; and (3) actual damages").

### 1. Plaintiffs Fail to Allege Causation.

To satisfy the causation standard for a civil RICO claim, a plaintiff must "plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity … was the but-for and proximate cause of the plaintiff's injuries." *Id.* In evaluating proximate causation for RICO claim, the central question is "whether the alleged violation led directly to the plaintiff's injuries." *Ray*, 836 F.3d at 1349 (quoting 18 U.S.C. § 1964(c)). Though the defendant's conduct "need not be the sole cause of the plaintiff's injuries," "there must be some direct relation between the conduct and the injuries…." *Id.* Unlike many other causes of action, "the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action—the injury must be direct." *Id.* (citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010)).

The Complaint is devoid of allegations establishing proximate cause within the meaning of RICO. Instead, it details at length the various ways in which Roberts and MFAG – not Dane's conduct – directly and proximately caused Plaintiffs' injuries:

- Plaintiffs built a relationship with Roberts, who told them that he could acquire works directly from the Foundation and sell them at below-market prices, Compl. ¶ 61;
- "Plaintiffs relied on MFAG's oral misrepresentations and written statements in the invoices and related writings," *Id.* ¶ 63;
- Roberts convinced Plaintiffs to enter a joint venture, and they relied on MFAG's representations that it was paying the Foundation for works and that their payments constituted a reimbursement of their half of the purchase price, *Id.* ¶¶ 71, 108;
- Roberts communicated with Plaintiffs posing as a Foundation employee to convince them that they were dealing with the Foundation, *Id.* ¶¶ 94–109; and
- MFAG sent individuals purporting to be from Phillips to evaluate the works Plaintiffs purchased and state that they were authentic. *Id.* ¶¶ 114, 116, 118.

The Complaint makes clear that Plaintiffs' injuries stemmed directly from their reliance on misrepresentations by Roberts and MFAG to purchase works from Roberts and MFAG. At bottom, Plaintiffs were harmed because they dealt with MFAG, not because of any conduct by Dane. Indeed, no allegation supplies a direct tie between Plaintiffs and Dane. And if the reader were left to wonder whether Defendants were really the driving force behind MFAG's sales to Plaintiffs, the Complaint removes all doubt by thoroughly describing Roberts' and MFAG's elaborate scheme to defraud them. At best, Plaintiffs allege that Dane supplied artwork to Roberts and fall far short of alleging actual participation in RICO acts that harmed Plaintiffs. Because they do not allege facts giving rise to an inference that predicate acts by Dane proximately caused their injuries, they state no RICO claim against Dane.

**2. Plaintiffs Fail to Plausibly Allege a RICO "Enterprise."**

To plead an "association-in-fact" enterprise, "a plaintiff must allege that a group of persons shares three structural features: '(1) a "purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit those associates to pursue the enterprise's purpose."'" *Cisneros*, 973 F.3d at 1211 (quoting *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017)).

Here, the common purpose allegedly was "defrauding art collectors through the manufacture, supply, and sale of forged artworks falsely represented as authentic Andy Warhol works from the Foundation." Compl. ¶ 163. Plaintiffs do not allege facts plausibly supporting an inference that Dane shared this purpose.

The Complaint alleges that Dane sold MFAG works that MFAG subsequently sold to Plaintiffs and which Plaintiffs later discovered were not authentic Andy Warhol works as Roberts had represented. *Id.* ¶¶ 73–84. It does not allege that Dane represented these works to be from the Foundation or took any measures to pass them off as such.[7] It says virtually nothing about representations Dane purportedly made about these works, only stating, in general terms, that Isen and Dane knew the works were forgeries because "they manufactured at least some of them." *Id.* ¶ 92.[8] Thus, again, Plaintiffs conflate supplying art with actual participation in the misrepresentations that could give rise to RICO liability. Their allegations do not state a shared purpose of defrauding art collectors by misrepresenting their authenticity, because the central feature of that purpose is misrepresentation. In the absence of concretely-plead allegations that Dane *misrepresented* artwork it sold, the Complaint has not alleged that Dane operated or managed a RICO enterprise.

#### 3. Plaintiffs Fail to Allege a "Pattern of Racketeering Activity."

A "pattern of racketeering activity" requires "at least two acts of racketeering activity." *Cisneros*, 972 F.3d at 1215 (citing 18 U.S.C. §§ 1962(c), 1961(5)). Plaintiffs

---

[7] At certain points, the Complaint attributes to Defendants "authentication materials," "fraudulent authentication," or "fabricat[ed] provenance documentation." Compl. ¶¶ 92, 110, 135. This "blending the identity of defendants in … allegations of fraud" has been deemed impermissible in RICO Claims. *Cisneros*, 972 F.3d at 1217. And even where Plaintiffs level this charge at Dane directly, Compl. at ¶¶ 111, 139, allegations that Dane "provid[ed] false authentication documentation" fails to "state with particularity the circumstances constituting fraud" required Rule 9(b) because Plaintiffs do not identify "the precise … documents" or their contents. *Id.* at 1216.

[8] The Complaint does not clearly state whether the "manufacture" refers to fraudulent art or the invoices and authentication materials surrounding these works.

identify no such acts, much less a pattern. The Complaint advances four categories of 218 U.S.C. § 1961(1) acts.

**a. Wire Fraud (18 U.S.C. § 1343) / Mail Fraud (18 U.S.C. § 1341).**

RICO allegations based on predicate acts of mail and wire fraud "must comply … with Fed. R. Civ. P. 9(b)'s heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Plaintiffs identify no wire communications made or caused by Dane. Though they assert that Defendants caused "Plaintiffs' transfers of purchase funds from Florida to MFAG in reliance on fraudulent Foundation provenance representations each Defendant knowingly enabled," Compl. ¶ 167(a), no factual allegations make it plausible that Dane caused such transfers. Instead, the Complaint indicates that Roberts and MFAG caused Plaintiffs to transfer their funds through their representations about the Foundation and the joint venture agreement. As to Dane's principal Isen, Plaintiffs rely on emails to Roberts stating that he needed to "get out of hock" and that he had "the queen all ready for u in Boca." *Id.* But these facially neutral communications lack any apparent connection to fraud, and Plaintiffs do not explain how they furthered Roberts' and MFAG's scheme. The fact that Isen communicated with Roberts through wires is not enough, because that use must be "in furtherance of" the scheme to defraud. *Am. Dental*, 605 F.3d at 1291. Without identifying with particularity how wire communications by Dane or Isen furthered the alleged fraud, Plaintiffs have failed to allege a series of predicate wire fraud acts.

"[T]o plead a RICO violation predicated on mail fraud," "a plaintiff must allege that some kind of deceptive conduct occurred." *Am. Dental*, 605 F.3d at 1292 (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007)). In the absence of any allegation Dane or Isen "made any affirmative misrepresentations in the[ir] mailings," Plaintiffs fail to plead this predicate act. *Martinez*, 480 F.3d at 1065. Plaintiffs allege that Defendants engaged in mail fraud by "caus[ing] forged artworks to be shipped … to Florida, with knowledge that the works would be sold to Plaintiffs as authentic Warhol works." Compl. ¶ 167(b). This allegation identifies no affirmative misrepresentation in these mailings; to the extent Plaintiffs rely on allegations that Dane "provid[ed] false authentication documentation," Compl. at ¶¶ 111, 139, as demonstrating misrepresentation, such allegation fails to "state with particularity the circumstances constituting fraud" as required by Rule 9(b) because Plaintiffs do not identify "the precise … documents" or their contents. *Cisneros*, 972 F.3d at 1216.

**b. Trafficking in Counterfeit Labels and Documentation (18 U.S.C. § 2318).**

To plead a RICO predicate act under 18 U.S.C. § 2318, "plaintiff must plead facts demonstrating that defendant 'knowingly trafficked in—(A) a counterfeit label, or illicit label affixed to, enclosing, or accompanying or designed to be affixed to, enclose, or accompany … (vi) a visual work of art.'" *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 307 (S.D.N.Y. 2013). "Counterfeit documentation … means documentation or packaging that appears to be genuine, but is not." 18 U.S.C. § 2318(b)(6).

Plaintiffs allege that Dane "provid[ed] false authentication documentation," Compl. ¶¶ 111, 139, but do not allege that Dane provided authentication documents claiming the work they sold MFAG were original Warhols purchased from the Foundation. By alleging generically that Dane provided "false authentication documents," with zero details as to what such documents purportedly stated, the Complaint falls short of creating a plausible inference that they trafficked in documentation that appeared to be genuine but was not. This conclusory statement offers no basis on which to infer how such documentation appeared to be genuine because it does not describe any particular feature characterizing it beyond the conclusion that it was "false." And Plaintiffs' reference to "forged Warhol signatures, invoices, and authentication documents," Compl. 167(c), impermissibly "lump[s] together" all Defendants with respect to the alleged counterfeiting. *See Ambrosia Coal & Constr. Co. v. Page Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007). Nowhere does the Complaint attribute forged signatures to Dane. Nor do its allegations suggest that Dane's *invoices themselves* were not genuine. *Id.* ¶¶ 73–84. In any event, counterfeit invoices from Dane to MFAG *still* would not form the basis of a RICO claim because such invoices are not alleged to have caused Plaintiffs' injuries. *See supra*, Section IV.D.1.

**c. Money Laundering (18 U.S.C. § 1957).**

A RICO claim predicated on money laundering "requires proof of scienter." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). That is, the defendant must have "know[n] that the property [was]

'criminally derived.'" *United States v. Baker*, 19 F.3d 605, 614 (11th Cir. 1994) (quoting 18 U.S.C. § 1957(c)).

The Complaint asserts that Defendant engaged in monetary transactions in criminally derived property by "the transfer of Plaintiffs' funds through MFAG to various Defendants in exchange for forged works and related services." Compl. ¶ 167(d). But Plaintiffs plead no facts demonstrating that Dane knew money received from MFAG was criminally derived. Instead, the Complaint simply alleges a series of transactions and advances the theory that Defendants *must* have known that MFAG, as a commercial art dealer, was defrauding art collectors. Compl. ¶ 93. Plaintiffs also allude to arrangements between Isen and Roberts involving "post-dated checks and staggered deposit schedules." *Id.* ¶¶ 167(d), 170.

This conclusory and boilerplate allegation to try to meet the RICO requirements is unsupported by any factual details or specificity concerning these checks and does not give rise to a strong inference that these defendants possessed the requisite factual intent," *Republic of Panama*, 119 F.3d at 949, because it lacks an identifiable link to criminal activity. *See Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d. 1321, 1352 (M.D. Fla. 2019) (RICO claim predicated on money laundering failed "even under the more lenient standards of Rule 12(b)(6) and Rule 8," where the complaint "fail[ed] to allege how [the] [d]efendants knew about the illicit transmission of these funds, when the funds were transferred, or in what form"). Indeed, the Complaint does not even properly allege that the money Dane received *was* criminally derived: it does not plead that payment to Dane for the art it sold MFAG was contingent upon

resale to the Perlmans or anyone else. If anything, the sequencing Plaintiffs plead indicates Dane was paid before and independent of any resale.

#### 4. Plaintiffs do not Satisfy RICO's Continuity Requirements

RICO "cannot be invoked every time a group of people causes an injury." *Cisneros*, 972 F.3d at 1208. "RICO targets *ongoing* criminal activity, rather than isolated criminal acts." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1265 (11th Cir. 2004) (emphasis in original). This "continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Id.* RICO continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition" *Id.* (quoting *H.J. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989)). Closed-end continuity may be demonstrated by a "series of related predicates extending over a substantial period of time," while open-ended can rely on allegations establishing "'that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or that 'predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* (quoting *H.J.*, 372 F. 3d at 241–42).

Here, there is no open-ended continuity as MFAG is closed and not operating. *Id.* Given that Plaintiffs are only alleged to have interacted with MFAG, its closure forecloses the specific threat of repetition. Plus, the Complaint lacks "facts showing

that Defendants engaged in the type of conduct engaged in with any other person or [that] otherwise show Defendants engaged in this behavior in the ordinary course of business." *Artsen* 792 F. Supp. 1358, 1370 (S.D. Fla. 2025).[9] Nor is there close-ended continuity as Roberts' conduct is only alleged to have occurred for slightly over a year, Compl. ¶ 168, and Dane's participation is only alleged to have occurred between May 17. 2023 and May 2, 2024, the dates it sold art to MFAG. *Id.* ¶¶ 73-84, 168. *Jackson*, 372 F.3d at 1266; *see also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.1994) (17 month period insufficient to show continuity); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir.1991) (13 months is not a substantial period of time).

#### 5. Because they Have Stated no Underlying RICO Violation, Plaintiffs' Conspiracy Claim also Fails.

Where, as here, a complaint does not adequately allege the elements of a RICO claim, no RICO conspiracy claim can stand, either. *Cisneros*, 972 F.3d at 1220.

### E. Liability Under Section 772.103, Florida Statutes

Claims brought under Fla. Stat. § 772.103(2)-(4), are analyzed according to federal RICO standards. *Jackson*, 372 F.3d at 1263–64. As with their federal RICO claim, Plaintiffs base their claim under "Florida's RICO law," *id.*, on predicate acts of wire fraud and mail fraud. Compl. ¶ 159. Because Plaintiffs fail to establish proximate cause or the requisite predicate acts, Section IV.D, Plaintiffs' Florida RICO

[9] As to Dane, the Complaint's allegation, "made upon information and belief" and supported only by anonymous online reviews, that Isen's "modus operandi" was "selling pages torn from arty book as authentic prints, accompanied by worthless Certificates of Authenticity issued by his own Great Dane Collection," Compl. ¶¶ 46–47, neither identifies particular instances of fraudulent conduct nor demonstrates that the scheme allegedly agreed to with MFAG constituted Dane's regular way of doing business.

claim should be dismissed for the same reasons as its federal claim. *See Prou v. Giarla*, 62 F. Supp. 3d 1365, 1381 (S.D. Fla. 2014) ("A private party suing for civil remedies under Florida RICO Act must also prove proximate cause and detrimental reliance and that their injuries flow from the predicate acts.") (internal quotations omitted)). Further, Plaintiffs do not plead facts supporting investment of criminal proceeds or acquisition or control of an enterprise. This Count fails for that additional reason.

### F. Plaintiffs do not State a Claim for Civil Conspiracy.

"[W]here a [civil] conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must plead this act with specificity." *Martinez*, 480 F.3d at 1065 (citing Fed. R. Civ. P. 9(b)).

Plaintiffs have not specifically plead an agreement by Dane to "defraud Plaintiffs by manufacturing, supplying, authenticating, and selling forged artworks falsely represented as authentic Andy Warhol works sourced from the Foundation and to misappropriate the proceeds of those sales." Compl. ¶ 174. No allegation specifically ties Dane's conduct to Plaintiffs so as to demonstrate that Dane agreed to defraud them. As alleged, Dane agreed to sell artwork to MFAG. Plaintiffs impute Roberts' and MFAG's purpose to Dane without adducing facts to demonstrate that Dane shared that purpose. Thus, they have not stated a claim for civil conspiracy.

## V. CONCLUSION

Absent from Plaintiffs' Complaint are factual allegations demonstrating that Dane agreed to, or did, defraud them. As a whole, Plaintiffs do not plead any of Dane's

alleged misconduct with particularity. The only particularity that exists pertains to settled allegations against Roberts and MFAG.

Plaintiffs' RICO claim falters at multiple steps, but falls particularly flat on causation. Allegations that Dane aided and abetted fraud fail for the same reason. Plaintiffs have not plead a FDUTPA claim because they identify no particular way that Dane deceived them. Nor can they sustain a conspiracy claim without any particular facts supporting an agreement to defraud them. Finally, Plaintiffs have missed a basic requirement of unjust enrichment liability: they do not allege that they directly conferred a benefit on Dane. For the foregoing reasons, Plaintiffs have failed to state a claim against Dane.

**WHEREFORE**, Defendants respectfully request that the Court dismiss the Complaint as to Defendant Dane Fine Art, LLC and dismiss said Defendant from this action.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendant Dane Fine Art LLC hereby requests a hearing on the foregoing motion. The motion presents nuanced issues involving fraud and civil RICO claims that would benefit from additional explication. The undersigned counsel estimates that one (1) hour is sufficient for argument of the issues set forth in this motion.

Respectfully submitted,

/s/ Eduardo F. Rodriguez________________
Eduardo F. Rodriguez (FL Bar No. 036423)
EFR Law Firm
2121 Ponce De Leeon Blvd., Ste. 400
Coral Gables, Florida 33134
(305) 340-0034
eddie@efrlawfirm.com

Benjamin A. Garber, Esquire
(*pro hac vice* forthcoming)
Justin S. Brooks, Esquire
(*pro hac vice* forthcoming)
Three Logan Square
1717 Arch Street, Fifth Floor
Philadelphia, PA 19103
(215) 568.2000
bgarber@kleinbard.com
jbrooks@kleinbard.com

*Attorneys for Defendant Dane Fine Art, LLC*

Dated: October 17, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) generated by the CM/ECF system and paper copies will be sent to those indicated as non-registered participants, on this 16th day of October 2026.

By: s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez