**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **SOFLAC Associates, LLC, et al.,**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**Nathan Isen, Dane Fine Art, LLC, et al.**<br><br>*Defendants.* | **Civil Action No. 1:26-CV-27124-DSL** |

**DEFENDANTS DANE FINE ART, LLC AND NATHAN ISEN'S MOTION FOR LEAVE TO FILE SEPARATE MOTION TO SEVER AND TRANSFER PURSUANT TO 28 U.S.C. § 1404(A) AND MOTION TO SEVER AND TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**

Mindful of the Court's recent order stating that Defendants should file all motions and responses jointly, Dkt. No. 15, and in an abundance of caution, Defendants Dane Fine Art, LLC and Nathan Isen (the "Dane Defendants") respectfully seek leave to file this motion separately from the other Defendants.

The entire premise of this motion is that Dane Defendants are not similarly situated to the Florida and Peru-based Defendants and have been improperly joined in a matter with them. The Dane Defendants also submit that the claims against them should be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). As such, this motion should and necessarily must be considered separately.[1]

---

[1] For similar reasons, the Dane Defendants respectfully request that the Court consider the existing motion to dismiss, Dkt. No. 13, which Nathan Isen has joined,

Accordingly, seeking leave concurrently, the Dane Defendants hereby move to sever Plaintiffs' claims against them pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and to transfer the resulting separate action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). The Dane Defendants respectfully request that the Court accept this motion and grant it for the reasons set forth in the accompanying Memorandum or Law in support thereof.

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel hereby certifies that the Dane Defendants' counsel have conferred with Plaintiffs' counsel as to the relief requested herein by e-mail communications and they have advised that they oppose this motion.

---

separately from any response to the Complaint by other defendants on a timetable that makes sense to the Court.

Respectfully submitted,

*/s/ Eduardo F. Rodriguez*_________________
Eduardo F. Rodriguez (FL Bar No. 036423)
EFR Law Firm
2121 Ponce De Leon Blvd., Ste. 400
Coral Gables, Florida 33134
(305) 340-0034
eddie@efrlawfirm.com

Benjamin A. Garber, Esquire
(admitted *pro hac vice*)
Justin S. Brooks, Esquire
(admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Fifth Floor
Philadelphia, PA 19103
(215) 568.2000
bgarber@kleinbard.com
jbrooks@kleinbard.com

*Attorneys for Defendant Dane Fine Art LLC*

Simon Ferro
Florida Bar No. 37014
The Ferro Law Firm, P.A.
2121 Ponce de Leon Blvd, Suite 400
Coral Gables, Florida 33134
Tel. 305.448.1033
Cell. 305.984.8892
Email. simon@theferrofirm.com

*Attorney for Nathan Isen*

Dated: October 23, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **SOFLAC Associates, LLC, et al.,**<br>*Plaintiffs,*<br>**v.**<br>**Nathan Isen, Dane Fine Art, LLC, et al.**<br>*Defendants.* | **Civil Action No. 1:26-CV-27124-DSL** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER AND TRANSFER UNDER 28 U.S.C. 1404(A)**

Defendant Dane Fine Art, LLC and Nathan Isen submit this Memorandum of Law in Support of their Motion to Sever claims against them pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and to transfer the resulting separate action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

## Table of Contents


I. INTRODUCTION ... 1

II. RELEVANT FACTUAL BACKGROUND ... 3

III. LEGAL STANDARDS ... 7

IV. ARGUMENT ... 9

A. The Court Should Sever DFA Because Plaintiffs Have Failed To Satisfy Rule 20(a)(2). ... 10

B. Severance Promotes Judicial Efficiency Under Rule 21 ... 12

C. Transfer Under 1404(a) is Appropriate ... 13

1. This Action Could Have Been Brought Against the Dane Defendants in EDPA ... 13

2. Convenience of witnesses favors litigating in Pennsylvania. ... 14

3. The locus of relevant facts and location of relevant documents favors litigating in Pennsylvania. ... 15

4. Convenience of the parties and Plaintiffs' choice of forum does not favor litigating in Florida. ... 16

5. The availability of process to compel the attendance of unwilling witnesses favors Pennsylvania ... 17

6. The relative means of the parties is neutral or favors transfer. ... 18

7. Pennsylvania's familiarity with the governing law is a neutral factor. 18

8. Judicial Efficiencies Likely Support Transfer. ... 19

V. CONCLUSION ... 20

## Table of Authorities

**Cases**

*Advanced Aerodynamics*, *LLC v. Unmanned Cowboys*, *LLC*, No. 0:15-cv-62679-KMM, 2016 WL 8738383 (S.D. Fla. May 31, 2016) ........ 19

*Atlantic Marine Const. Co.*, *Inc.* v. *U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49 (2013) ........ 8, 9

*Breaking Glass Pictures, LLC v. Does 1-99*, No. 1:13-cv-0882-AT, 2013 WL 8336085 (N.D. Ga. Apr. 12, 2013) ........ 13

*Clinton* v. *Sec. Benefit Life Ins. Co.*, No. 19-24803, 2020 WL 6120565 (S.D. Fla. June 29, 2020) ........ 14, 15, 16, 18, 19

*Combs* v. *Fla. Dept. of Corrections*, 461 F. Supp. 3d 1203 (N.D. Fla. 2020) ........ 9

*Cont'l Grain Co.* v. *The FBL-585*, 364 U.S. 19 (1960) ........ 14

*Del Monte Fresh Produce Co.* v. *Dole Food Co.*, 136 F. Supp. 2d 1271 (S.D. Fla. 2001) ........ 9

*DIRECTV, Inc. v. Brown*, No. 6:03-cv-234-ORL-22KRS, 2003 WL 25569731 (M.D. Fla. May 22, 2003) ........ 7

*Dopson-Troutt v. Novartis Pharma. Corp.*, 295 F.R.D. 536 (M.D. Fla. 2013) ........ 18

*E. Cornell Malone Corp. v. Sisters of the Holy Family, St. Mary's Acad. of the Holy Family*, 922 F. Supp. 2d 550 (E.D. La. 2013) ........ 8, 13

*Emp'rs Mut. Cas. Co.* v. *Bartile Roofs*, *Inc.*, 618 F.3d 1153 (10th Cir. 2010) ........ 14

*Essex Ins. Co. v. Kart Constr., Inc.*, 2015 WL 628782 (M.D. Fla. Feb. 12, 2015) .. 8, 13

*Ewing v. Empire Capital Funding Grp.*, Inc., No. 17cv2507-LAB (MDD), 2019 WL 1746575 (S.D. Cal. April 17, 2019) ........ 12

*GolTV*, *Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301 (S.D. Fla. 2017) ... 17

*Grail Semiconductor*, *Inc. v. Stern*, No. 12-60976-CIV, 2013 WL 2243961 (S.D. Fla. May 21, 2013) ........ 17

*Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213 (E.D. La. 2008) ........ 18

*Kang v. Benning GF, LLC*, No. 4:16-CV-152 (CDL), 2017 WL 346009 (M.D. Ga. Jan. 23, 2017) ........ 10

*Luster v. Lockheed Martin Corp.,* No. 1:09-cv-01946, 2009 WL 4641812 (N.D. Ga. Dec. 1, 2009) ........ 8

*Manuel* v. *Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005) ........ 9

*Morrissey* v. *Subaru of Am., Inc.*, No. 1:15-cv-21106-KMM, 2015 WL 9583278 (S.D. Fla. Dec. 31, 2015) ........ 19

*Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236 (M.D. Fla. 2016) ........ 17

*Neil Bros. Ltd.* v. *World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006) ........ 14

*Parchman v. SLM Corp.,* 896 F.3d 728 (6th Cir. 2018) ........ 8

*Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004) ........ 18

*Price v. City of Elyria*, 2025 WL 2733667 (N.D. Ohio Sept. 25, 2025) ........ 8

*Trinity Christian Ctr. of Santa Ana, Inc., v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322 (M.D. Fla. 2010) ........ 16

*U.S.* v. *Nixon*, 418 U.S. 683 (1974) ........ 14

*Westinghouse Air Brake Technologies Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143 (D. Del. 2019) ........ 8

**Statutes**

28 U.S.C. § 1391 ........ 14

28 U.S.C. § 1404 ........ 8

**Rules**

Fed. R. Civ. P. 20(a)(2) ........ 7, 11

Fed. R. Civ. P. 21 ........ 7

Fed. R. Civ. P. 45 ........ 17

## I. INTRODUCTION

Through documents obtained pursuant to a third-party subpoena in a settled case that Plaintiffs filed against non-parties Leslie Roberts and Miami Fine Art Gallery ("MFAG"), Plaintiffs learned that Dane purchased *legitimate* Andy Warhol art from Christie's, DOYLE Auctioneers and Appraisers, and other storied auction houses and legitimate art dealers based near Philadelphia. These are the precise works of art Plaintiffs detail in the current Complaint. *See* Compl. ¶¶ 74-84. Plaintiffs already know the claims against the Dane Defendants are meritless, and new discovery will further prove it. *Infra* pp. 5-6. Critically for the present motion, this discovery and the pertinent transactions involving the Dane Defendants are centered in and around Southeastern Pennsylvania, have only the most tenuous connection to Southern Florida, and have nothing to do with any of the other named Defendants.

Despite conclusory allegations that the Dane Defendants were engaged in a "criminal enterprise" with Roberts and MFAG, the Complaint does not include a single allegation that they ever interacted with any other named Defendant (each based in Florida or Peru). Nor does it allege that the Dane Defendants interacted with any of the Florida-based Plaintiffs. Rather, it alleges that each Defendant provided separate Andy Warhol forgeries to Roberts and MFAG. *E.g.* Compl. ¶¶ 73-88. It then alleges that Roberts and MFAG falsely represented that they obtained art from the Andy Warhol Foundation for the Visual Arts, Inc. through an intricate scheme replete with fabricated Foundation invoices and fictious Foundation representatives. *Id.* ¶¶ 14, 56–72, 91, 94–109, 113–120.

Roberts and MFAG are the only common link between the parties in this case, but the claims, defenses, and discovery in this case will not focus on the fraud they perpetuated on Plaintiffs. That case is already over. Extensive discovery proceeded and concluded. *Infra* p. 5. Plaintiffs settled and dismissed the matter. *See* Exhibit A. Roberts has been sentenced to 46 months in prison.[2] Miami Fine Art Gallery closed and has never reopened. The claims against each unrelated Defendant in this case will instead focus on what that Defendant allegedly did.

For these reasons, severance is appropriate. Plaintiffs' claims are not asserted against Defendants jointly or severally. Defendants did not interact, and any art they allegedly supplied to Plaintiffs through Roberts is discreet and non-overlapping. There are separate pools of damages (if any) for each stream of art. Nor are the claims properly construed as arising from the *same* transaction or occurrence or as involving the same facts or common law as is required for joinder under FED. CIV. P. 20. The Complaint alleges different forgeries and fabrications by each Defendant, different interactions with Roberts from different locations, and will involve different application of law even if Plaintiffs purport to bring the same causes of action against all Defendants. Moreover, severance of the Dane Defendants will promote judicial efficiency and is appropriate under FED. R. CIV. P. 21 even if joinder had been proper.

For similar reasons, transfer of the claims is warranted. Nathan Isen and all other Dane employees live and work in Southeastern Pennsylvania, and Dane is

---

[2] *See* Exhibit B, available at https://www.nbcmiami.com/news/local/ex-owner-of-coconut-grove-art-gallery-gets-prison-in-fake-warhol-scheme/3870486/

based in Ardmore, Pennsylvania. Compl. ¶¶ 29-30; Declaration Kristopher Isen ("Isen Decl.") ¶¶ 19-21. It is this location from which they purchased (or allegedly created) the art at issue. Pennsylvania is where they maintained the art at issue. It is the location from which they shipped the art at issue. And it is where they made the relevant communications. The most relevant third parties to claims against the Dane Defendants are based in close proximity to Ardmore, not Florida: Dane purchased most of its Warhols from Christie's, Rago Auctions, and DOYLE Auctioneers, all based in New York or in even closer proximity to Ardmore. Extensive discovery to these third parties is central to the Dane Defendants' defense. Notably, critical witnesses from these entities are beyond the court's subpoena power, and attendance of witnesses from these entities at trial in Florida cannot be assured.

Collectively, the factors under 28 U.S.C. § 1404(a) strongly favor transfer to the Eastern District of Pennsylvania. Because the bulk of the litigation against the Dane Defendants will focus on conduct in Pennsylvania and because Pennsylvania is a far more convenient forum for non-party witnesses and Defendants, habitation in Florida by some – but not all – Plaintiffs cannot overcome the interests of justice favoring transfer.[3]

## II. RELEVANT FACTUAL BACKGROUND

On August 29, 2024, Plaintiffs filed a lawsuit against Leslie Roberts, Miami Fine Art Gallery LLC, and Alex Herman in the Circuit Court of the Eleventh Judicial

[3] Plaintiff RMP Investments, LLC is an Illinois limited liability company with a principal place of business in Illinois; its members are Illinois citizens. Compl. ¶ 23. *See also* Section IV.C.4, p. 18.

Circuit In and For Miami-Dade County, Florida (the "Roberts Action"). Case No. 2024-016550-CA-01;[4] Exhibit C (Amended Complaint).

Plaintiffs Judy and Richard Perlman alleged that Roberts told them he had a relationship with the Andy Warhol Foundation for the Visual Arts, Inc., enabling him to acquire and sell Warhol works at a discount. Exhibit C, ¶ 40. Under this pretense, Roberts and MFAG sold the Perlmans art that was purportedly made by Warhol. *Id.* ¶ 41–42. The Complaint detailed an elaborate scheme – replete with document fabrication and creation of fictious persons – that never mentioned any current Defendant or the purported sourcing of MFAG's art. *Id.* ¶¶ 45, 47–60, 64-87.

The Roberts Action proceeded through extensive discovery. Roberts and MFAG responded to interrogatories and produced documents in response to at least three sets of document requests. *See* Exhibits D-E. Plaintiffs also pursued extensive third-party discovery, issuing subpoenas to roughly 20 third parties, including Dane. *See* Case No. Case No. 2024-016550-CA-01, Dkt. Nos 42, 62-80.[5] Dane received a subpoena on January 15, 2025. *See id.* Dkt. No. 42, Exhibit F. Among other requests, the subpoena to Dane sought all documents concerning the sale of Warhols to MFAG; all communications with MFAG and Roberts; invoices, purchase agreements, payments, and other documents concerning Dane's *purchase* of the Warhols; and all valuations and appraisals of the works. Exhibit F pp. 10-11.

---

[4] Plaintiffs allege that Herman is a fictitious person created by Roberts to misrepresent sourcing of art sold to Plaintiffs; it is unclear if he actually exists.
[5] Available for viewing at https://www2.miamidadeclerk.gov/ocs/searchResults?qs=%252F0LOVpyn1%252BGhvSvfzs5LYaCsESF89dE6EaAa%252BIy9F1BN8dIjwF29F4rFerp3SQ3e

The discovery Dane produced in the Roberts Action vindicates the Dane Defendants and shows that the art now at issue was purchased from reputable sellers with representations of authenticity, priced as authentic Warhols, and sold to MFAG at appropriate prices reflective of its value. By way of representative examples, Plaintiffs' current Complaint alleges that Dane sold MFAG "three forged "Witch" works in October 2023. Compl. ¶ 76. Discovery Dane previously produced shows it purchased an authentic Witch from Christie's on April 23, 2023 for an all-in amount (with taxes) of $74,844 and sold it to MFAG on October 16, 2023 for 79,850.00. *See* Exhibit G at DFA000099, DFA000118. The other authentic Witch that Dane sold to MFAG was purchased from Rago Auctions, headquartered in Lambertville, New Jersey, on October 12, 2023 for $41,580.00 and sold to MFAG on October 16, 2023 for $49,500. Exhibit G at DFA000118, DFA000122.[6] Plaintiffs allege Dane sold MFAG a forged "Warhol cow," that MFAG then sold to Plaintiffs. Compl. ¶ 75. Discovery previously produced shows Dane purchased an authentic, premium version of Warhol Cow from Manhattan-based DOYLE Auctioneers for a total of $10,080 on November 1, 2023 that it sold to MFAG on November 11, 2023. Exhibit H, DFA000142; Compl. ¶ 75; Isen Decl. ¶ 12. Plaintiffs allege Dane sold MFAG a forged Truck 369, which MFAG sold to Plaintiffs as an authentic Warhol. Compl. ¶ 83. Discovery previously produced shows Dane purchased an authentic and premium version of Truck 369

---

[6] The Complaint incorrectly suggests that Dane sold three of these works to MFAG. Compl. ¶ 76. It only sold two.

from DOYLE Auctioneers on November 1, 2023 for a total of $44,100 and sold it to MFAG for $ 46,600.00 on November 11, 2023. Exhibit H at DFA000140, DFA000142.

These are but a few examples. Dane purchased the overwhelming majority of its Warhols from Christie's. *See* Exhibit I at DFA000006-18; Isen Decl. ¶ 5 (explaining that an estimated 80% of purchased Warhols came from Christie's). The remaining key parties from whom Dane purchased are headquartered in or near New York. Not Florida. Nor do Plaintiffs claim that these entities interacted with Florida-based Plaintiffs or non-parties. And they did not: their interactions were with Ardmore, Pennsylvania-based Dane Fine Art.

It is difficult to imagine what more Plaintiffs could want. But any new first-party discovery would focus on actions undertaken in Southeastern Pennsylvania. The Dane Defendants will also pursue third-party discovery of Christie's and others from whom it purchased Warhols to show that the Warhols are authentic. Isen Decl. ¶¶ 10-17. The distance from Christie's U.S. headquarters in Manhattan to the federal courthouse in Philadelphia is roughly 95 miles,[7] the same is true for other New-York based auctioneers and sellers; a train ride between New York and Philadelphia is scarcely more than an hour.[8] New York is more than 1,200 miles from Miami: a trip between the two would require a multi-day drive or flight, and overnight stays.

---

[7]google.com/maps/dir/20+Rockefeller+Plaza,+New+York,+NY+10020,+USA/601+Market+St,+Philadelphia,+PA+19106,+USA/data=!4m8!4m7!1m2!1m1!19sChIJQct9IP9YwokRyQugXfTm0So!1m2!1m1!19sChIJ3dcTyYPIxokRqZRTlXQGpa8!3e0 Some of the art was purchased from sellers in even closer proximity to Philadelphia, such as Rago Auctions, based in Lambertville, NJ, roughly 41 miles from Philadelphia.
[8] https://highspeedtrains.com/route/philadelphia-to-new-york

Even to the extent that Dane did not actually sell the authentic Warhols it purchased to MFAG and instead created forgeries as substitutes – which Dane vigorously disputes and denies – that discovery is also focused in Southeastern Pennsylvania. Dane is based in Ardmore, Pennsylvania, squarely within the jurisdiction of the Eastern District of Pennsylvania, and its members and employees live and work nearby. *See* Isen Decl. ¶¶ 19-21. Any "fabrications" occurred there. That is also where Dane maintains its art catalogue, where any art was shipped to MFAG from, and where communications to Roberts were made from. *Id.*

## III. LEGAL STANDARDS

FED CIV. P. 20(a)(2) identifies the circumstances under which multiple defendants may be joined in one action. The Rule provides that:

> (2) Persons . . . may be joined in one action as defendants if:
>
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; ***and***
> >
> > (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added).

Rule 21 authorizes the Court to sever any misjoined party or claim at any stage of a lawsuit, and this Court has broad discretion to sever parties based on misjoinder. Fed. R. Civ. P. 21; *DIRECTV, Inc. v. Brown*, No. 6:03-cv-234-ORL-22KRS, 2003 WL 25569731, at *2 (M.D. Fla. May 22, 2003). Additionally, Rule 21 "gives the court great discretion in restructuring an action to promote the efficient administration of justice and may apply or not apply for reasons other than

misjoinder or non-joinder, including judicial efficiency." *Luster v. Lockheed Martin Corp.,* No. 1:09-cv-01946, 2009 WL 4641812, at *1 (N.D. Ga. Dec. 1, 2009).

Even if the standards for permissive joinder under Rule 20 are met, severance is permissible and appropriate to avoid prejudice or undue burden to a party, promote judicial economy (for example, where separate claims or defenses require different witnesses and documentary evidence), avoid jury confusion, or avoid unnecessary inconvenience of parties or witnesses. *See, e.g., Essex Ins. Co. v. Kart Constr., Inc.*, 2015 WL 628782, at *5-7 (M.D. Fla. Feb. 12, 2015) (noting that severance is not limited to curing misjoinder and severing cross-claim despite factual overlap with main claims because it would "serve the ends of justice and further the prompt and efficient resolution of the main action"); *E. Cornell Malone Corp. v. Sisters of the Holy Family, St. Mary's Acad. of the Holy Family*, 922 F. Supp. 2d 550, 561-63 (E.D. La. 2013) (severing claim despite "some overlap" with other claims where it would focus on different witnesses and evidence).[9]

Motions to transfer venue are governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Atlantic Marine Const. Co., Inc.* v. *U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 59 (2013) (recognizing same). "Whether a transfer is appropriate depends on two

[9] *See also Parchman v. SLM Corp.,* 896 F.3d 728, 733-34 (6th Cir. 2018); *Price v. City of Elyria*, 2025 WL 2733667, at *8 (N.D. Ohio Sept. 25, 2025) (discussing reasons for severance); *Westinghouse Air Brake Technologies Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 148-49 (D. Del. 2019) (discussing Rule 20 requirements and applying additional factors to grant severance).

inquiries: (1) whether the action 'might have been brought' in the proposed transferee court and (2) whether various factors are satisfied so as to determine if a transfer to a more convenient forum is justified." *Del Monte Fresh Produce Co.* v. *Dole Food Co.*, 136 F. Supp. 2d 1271, 1281 (S.D. Fla. 2001).

In assessing a motion to transfer venue, Courts in the Eleventh Circuit examine nine factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *Manuel* v. *Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see also Atlantic Marine*, 571 U.S. at 62 n.6 (same). "The list is non-exhaustive insofar as the statutory language [of § 1404(a)] is 'broad enough to take into account all factors relevant to convenience and/or the interests of justice.'" *Combs* v. *Fla. Dept. of Corrections*, 461 F. Supp. 3d 1203, 1208 (N.D. Fla. 2020) (citation omitted).

## IV. ARGUMENT

The Court should sever the Dane Defendants because Plaintiffs have failed to satisfy Rule 20(a)(2). But even to the extent the Court feels Plaintiffs properly joined them with unrelated Florida and Peru Defendants, severance is permissible and appropriate under Rule 21 as it would promote judicial efficiency. Forthcoming discovery relevant to claims and defenses of Dane Defendants does not overlap with

discovery relevant to the other Defendants: it is all focused on their actions occurring in Pennsylvania or third-party actions in and around Pennsylvania and New York.

For the same reasons, the Court should transfer to the Eastern District of Pennsylvania under 28 U.S.C. 1404(a). The Dane Defendants had no direct interactions with Florida-based Plaintiffs. And their interactions with Florida-based non-parties occurred in Pennsylvania. Moreover, Plaintiffs already took extensive discovery of those non-parties. With Roberts in prison and MFAG defunct, there is no discernible additional discovery that is forthcoming from those sources.

### A. The Court Should Sever DFA Because Plaintiffs Have Failed To Satisfy Rule 20(a)(2).

The Complaint's allegations demonstrate that Plaintiffs' fraud, conspiracy, unjust enrichments, and even RICO claims relate to different transactions or occurrences. In *Kang v. Benning GF, LLC*, No. 4:16-CV-152 (CDL), 2017 WL 346009 (M.D. Ga. Jan. 23, 2017), the court severed the plaintiff's claims because the plaintiff alleged two distinct Fair Labor Standards Act claims against two distinct defendants. As a result, the Court severed the plaintiff's claims pursuant to Rule 21. *Id.* at *1.

Here, Plaintiffs allege that each Defendant created distinct pieces of fabricated art and/or authentication documents from different locations, in different manners, and sold them to Roberts and MFAG without any discussion or interaction with each other. Plaintiffs suggest – but do not clearly plead – that Pennsylvania-based Dane and its principal Nathan Isen produced torn pages from books that it passed off as authentic art (Compl. ¶¶ 45-46) and supposedly forged invoices and authentication

materials. *Id.* ¶92.[10] Florida-based Oscar Cordova allegedly created forged works on canvas that he directly misrepresented as coming from the Foundation. *Id.* ¶¶ 33, 50. Florida-based Dampf and WarholandFriends LLC allegedly produced "trial proofs" en masse and directly represented that these came from the Foundation. *Id.* ¶¶ 34-35, 51, 87. Florida-based Edward Kurstak allegedly directly misrepresented that works he provided to Roberts came from the Foundation and otherwise affixed fraudulent authentication to pieces of art from other sources (with no allegations that he communicated with Dane or other art suppliers). *Id.* ¶¶52, 88. Peru-based Defendants allegedly handpainted forgeries onto canvas and shipped their work to MFAG for prices as low as $30. *Id.* ¶¶ 31-32, 53, 86. Even Plaintiffs' RICO claim focuses only on supposed coordination by each Defendant with Roberts, not coordination ***between*** Defendants. There is not a single allegation that the Dane Defendants interacted with or even know any other Defendant.[11]

For these reasons, Plaintiffs also fail to satisfy Fed. R. Civ. P. 20(a)(2)(B), which requires a showing that common questions of law or fact will arise in the action. The only thing in "common" in Plaintiffs' Complaint is that they allege the same causes of action against each Defendant. But this is not a sufficient basis for joinder when the claims arise from separate transactions and facts. *See Ewing v. Empire Capital Funding Grp.*, Inc., No. 17cv2507-LAB (MDD), 2019 WL 1746575, at *2 (S.D. Cal.

[10] Plaintiffs do not clearly explain the nature of Dane's supposed forgery or fabrication and do not even clearly state what type of documents to which it pertains.
[11] It is worth underscoring the extensive discovery Plaintiffs previously obtained from Roberts and MFAG and even Dane directly. And the 20 third-party subpoenas they served. If this occurred and they could have plead this, they would have.

April 17, 2019) ("While each of these defendants . . . may have violated the Telephone Consume Protection Act, they did so on separate occasions and in unrelated ways.").

Even if Plaintiffs prove every single factual allegation against the Florida and Peru Defendants, it has no impact on their factual allegations and claims against the Dane Defendants. Likewise, even if Plaintiffs prove every single factual allegation against the Dane Defendants, it has no impact on their factual allegations or claims against the Florida and Peru Defendants. The previously litigated and settled fraud by Roberts and MFAG – and the direct interactions of those non-parties with Plaintiffs – do not change this at all. Plaintiffs already obtained extensive discovery from Roberts and MFAG, and further discovery is unlikely to be forthcoming with the entity defunct and Roberts in prison. The purported fraud at issue now is the predecessor actions by each Defendant to create and disseminate fraudulent art to Roberts and MFAG. These are unrelated for each Defendant and so is the discovery needed to substantiate them or defend against these allegations.

Accordingly, Plaintiff's claims against the Dane Defendants should be severed and proceed separately pursuant to Rule 21.

### B. Severance Promotes Judicial Efficiency Under Rule 21

Even to the extent the Court believes joinder was proper, severance of Plaintiffs' claims under Rule 21 promotes judicial efficiency. The bulk of discovery concerning Dane's purchase and sale of the art in question will focus on the acts of out-of-state third parties, as discussed at length above.

Plaintiffs will have to show that the authentic art Dane purchased from Christie's and other auctioneers and dealers is *not* the art it sold to MFAG and/or

that these entities sold Dane fraudulent art it knowingly sold to MFAG. Dane intends to pursue extensive discovery of these entities in connection with its defense. Thus, litigation against the Dane Defendants will require discovery and analysis of different and separate facts that do not pertain to other Defendants, supporting severance. *E.g. Breaking Glass Pictures, LLC v. Does 1-99*, No. 1:13-cv-0882-AT, 2013 WL 8336085, at *4 (N.D. Ga. Apr. 12, 2013) (severing defendants under Rule 21 because "[t]he likelihood of different defenses demonstrates that each claim should be considered separately"); *Essex*, 2015 WL 628782, at *5-7 (severing cross-claim despite factual overlap with main claims because it would "serve the ends of justice and further the prompt and efficient resolution of the main action"); *E. Cornell*, 922 F. Supp. 2d at 561 (severing claim despite "some overlap" with other claims because it would focus on different witnesses and documentary evidence).

Severance is especially appropriate here because cooperation of these third parties and attendance at trial is far from secured. *See* Sections IV.C.2 and IV.C.5.

### C. Transfer Under 1404(a) is Appropriate

Each 28 U.S.C. § 1404(a) factor strongly supports transfer or is neutral.

#### 1. This Action Could Have Been Brought Against the Dane Defendants in EDPA

A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Venue is proper in Pennsylvania because it is where "a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(b). Dane purchased its Warhols from Ardmore, Pennsylvania, housed and shipped them from there, and communicated from this location. Any alleged fabrication of art or documentation also occurred in Pennsylvania.

**2. Convenience of witnesses favors litigating in Pennsylvania.**

This critical factor examines convenience to the witnesses, which decisively weighs in favor of transfer to the Eastern District of Pennsylvania. The transfer statute, Section 1404, was designed to protect witnesses "against unnecessary inconvenience and expense." *Cont'l Grain Co.* v. *The FBL-585*, 364 U.S. 19, 27 (1960). Courts recognize "the key role of the testimony of witnesses in the judicial process." *U.S.* v. *Nixon*, 418 U.S. 683, 710 n.18 (1974); *see also Clinton* v. *Sec. Benefit Life Ins. Co.*, No. 19-24803, 2020 WL 6120565, at *4 (S.D. Fla. June 29, 2020) ("aside from a plaintiff's forum choice, the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." (cleaned up)); *Emp'rs Mut. Cas. Co.* v. *Bartile Roofs*, *Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."); *Neil Bros. Ltd.* v. *World Wide Lines*, *Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in transfer analysis.")

At a minimum, relevant witnesses Dane expects to call includes Libia Elena Nahas, of Manhattan-based Christie's; Cynthia L. Klein, Senior Vice President and Director of Prints & Multiples of Manhattan-based DOYLE; and Meredith Hilferty, Director of Fine Art Auctions at Lambertsville, New Jersey-based Rago Arts. Isen Decl. ¶¶ 15-16.

It would be inconvenient to attempt to compel process upon key witnesses from Chistie's, DOYLE Auctioneers, and other parties that supplied Dane's Warhols. These witnesses are scarcely more than an hour from Philadelphia – less in the case of Rago – and would have to undertake protracted and burdensome travel to participate in this case in Florida at trial or otherwise. Nor could their attendance be assured or compelled. *See* Section IV.C.5.

**3. The locus of relevant facts and location of relevant documents favors litigating in Pennsylvania.**

The next factors consider the locus of relevant facts and relevant location of documents and tangible materials. *Clinton*, 2020 WL 6120565 at *5.

Although electronic transmission of photographs and documents allows for greater ease of access to sources of proof, any physical evidence (*e.g.*, the art at issue) is located in Pennsylvania. Some of the Warhol art at issue was repurchased by Dane and is in its possession in Pennsylvania (since it is original and valuable and not forged as Plaintiffs contend). *See* Isen Decl. ¶ 23. Transfer to the Eastern District of Pennsylvania will facilitate physical inspection (which may prove necessary). These factors favor transfer because evidence is "physically stored" in Pennsylvania and "many of the witnesses, as

set forth above," and any documents they may have, "are also located in [and near Pennsylvania], making this forum much more preferable than Florida." *Clinton*, 2020 WL 6120565 at *5. And as discussed above, the salient conduct occurred in and around Pennsylvania. By contrast, the Dane Defendants and third parties had no interactions with Plaintiffs or any other Florida parties. The only exception is Dane's interactions with Roberts and MFAG, and Plaintiffs already obtained extensive discovery on those interactions.

**4. Convenience of the parties and Plaintiffs' choice of forum does not favor litigating in Florida.**

These factors examine the convenience of the parties, including the "appearance of employees at court, and, to some extent, the appearance of counsel." *Clinton*, 2020 WL 6120565 at *5 (quoting *Trinity Christian Ctr. of Santa Ana, Inc., v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328 (M.D. Fla. 2010)). In addition to third party witnesses, trial in Florida would be inconvenient to Dane and its lead counsel, which does not have a home office in or near Florida.[12] By contrast, Plaintiffs are the only parties inconvenienced by transfer. While plaintiff's choice of forum is generally entitled to some deference and "transfer under § 1404(a) is generally inappropriate where it merely shifts the inconvenience from one party to another," *Clinton*, 2020 WL 6120565 at *5, this factor should be given less weight under the circumstances.

The general deference to Plaintiffs' choice of forum and inconvenience to Plaintiffs' is subject to multiple exceptions. One exception applies "where the

[12] While convenience of counsel only receives modest weight, some of Plaintiffs' counsel is based in Quinn Emanuel's New York office where third parties are based.

operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff[;] the choice of forum is entitled to less consideration." *Grail Semiconductor, Inc. v. Stern*, No. 12-60976-CIV, 2013 WL 2243961, at *3 (S.D. Fla. May 21, 2013) (citations omitted); *see also GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1322 (S.D. Fla. 2017) ("[D]eference usually afforded to the plaintiff's choice of forum is diminished where the locus of operative facts lies elsewhere and other factors tip in favor of another venue."). The operative facts pertaining to the Dane Defendants lie in Pennsylvania.

Moreover, one of the corporate Plaintiffs is an Illinois company (Compl. ¶ 23) and Matthew Perlman is a California resident. *See* Exhibit C ¶ 25. Matthew is presently Vice President of corporate plaintiff SOFLAC Associates, LLC (*id.*; Compl. ¶ 22) and a key player in the acquisitions of the Perlman's art from MFAG. Compl. ¶¶ 2, 7-8, 22, 57, 59-60, 94-107, 113. This further reduces deference to Florida as a chosen forum. *E.g. Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1246 (M.D. Fla. 2016). Additionally, Florida Plaintiffs are not especially inconvenienced by having to travel to Pennsylvania for a trial given their substantial wealth, *infra* Section IV.C.6, and Defendants are willing to depose them in Florida.

**5. The availability of process to compel the attendance of unwilling witnesses favors Pennsylvania.**

Given that the parties that sold Dane its Warhols are based in the New York and Philadelphia areas, witnesses from Christie's, Rago, and DOYLE could not be compelled to attend a trial in Florida. *See* Fed. R. Civ. P. 45(c)(1)(A)

("A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person…"); *Dopson-Troutt v. Novartis Pharma. Corp.*, 295 F.R.D. 536, 539 (M.D. Fla. 2013) ("[T]o compel a person to attend trial, the person must … not be subject to the protections of in Rule45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse." (quoting *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213, 218 (E.D. La. 2008)).

The federal court in Philadelphia, by contrast, is within 100 miles of all three parties. *See supra* Section II. Therefore, the availability of process to compel the attendance of unwilling witnesses favors transfer to Pennsylvania.

**6. The relative means of the parties is neutral or favors transfer.**

While the relative means of the parties is not entirely clear, it is clear the Perlmans have substantial net worth given their status as avid art collectors and claims to have spent nearly $7 million on art from MFAG alone. *See generally* Complaint; Exhibit J.

**7. Pennsylvania's familiarity with the governing law is a neutral factor.**

"This is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Clinton*, 2020 WL 6120565 at *7 (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004)). "[T]his factor is merely neutral

because district courts often have little trouble applying the law of other states." *Id.* This is especially true for Plaintiffs' federal RICO claim, but the Eastern District of Pennsylvania is also well-equipped to apply Florida precedent on standard fraud-based Florida statutory claims.

**8. Judicial Efficiencies Likely Support Transfer.**

"[T]he Southern District of Florida has one of the busiest dockets in the country[.]" *Morrissey* v. *Subaru of Am.*, *Inc.*, No. 1:15-cv-21106-KMM, 2015 WL 9583278, at *4 (S.D. Fla. Dec. 31, 2015). Thus, it will "likely be less expensive and more efficient for the case to proceed" in the Eastern District of Pennsylvania. *Advanced Aerodynamics*, *LLC* v. *Unmanned Cowboys*, *LLC*, No. 0:15-cv-62679-KMM, 2016 WL 8738383, at *1 (S.D. Fla. May 31, 2016). Indeed, in 2026, the Southern District remains one of the busiest courts in the country with a weighted caseload of roughly 720 weighted filings per judgeship, exceeding that of the Eastern District of Pennsylvania: while median time to trial in the Southern District of Florida is a relatively speedy 16.4 months, the Eastern District of Pennsylvania edges that out at 13.4 months, the speediest district in the country.[13]

Additionally, as described above, the relevant claims and defenses center around events and conduct that occurred in Pennsylvania.

---

[13] *See, e.g.,* https://legalytics.substack.com/p/the-federal-courts-uneven-workload; https://www.hunton.com/Rocket-Docket-2026; https://www.hunton.com/media/publication/200609_Hunton-Rocket-Docket-Tata-2025.pdf

## V. CONCLUSION

For the reasons set forth above, the Court should sever the claims against the Dane Defendants under Rules 20 and 21 of the Federal Rules of Civil Procedure and transfer them to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

*/s/Eduardo F. Rodriguez*_______________
Eduardo F. Rodriguez (FL Bar No. 036423)
EFR Law Firm
2121 Ponce De Leeon Blvd., Ste. 400
Coral Gables, Florida 33134
(305) 340-0034
eddie@efrlawfirm.com

Benjamin A. Garber, Esquire
(admitted *pro hac vice*)
Justin S. Brooks, Esquire
(admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Fifth Floor
Philadelphia, PA 19103
(215) 568.2000
bgarber@kleinbard.com
jbrooks@kleinbard.com

*Attorneys for Defendant Dane Fine Art LLC*

Simon Ferro, Jr., Esquire (FL Bar No. 37014)
The Ferro Firm
2121 Ponce de Leon Blvd., Suite 400
Coral Gables, FL 33134
(305) 448.1033
simon@theferrofirm.com

*Attorney for Nathan Isen*

Dated: October 23, 2026

## CERTIFICATE OF SERVICE

I, Eduardo F. Rodriguez, Esquire, do hereby certify that a true and correct copy of the foregoing Motion for Leave to File Separate Motion to Sever and Transfer**,** Motion to Sever and Transfer**,** and accompanying Memorandum were caused to be served on counsel for Plaintiffs via email and the Court's electronic filing system:

Erica Perdomo
Quinn Emanuel Urquhart & Sullivan
2601 South Bayshore Drive
Suite 1550
Miami, FL 33133

*/s/Eduardo F. Rodriguez*
Eduardo F. Rodriguez, Esquire

*Attorney for Defendant Dane Fine Art LLC*

Dated: October 23, 2026