UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 1:26-cv-27124-LEIBOWITZ

SOFLAC ASSOCIATES, LLC, *et al.*,

Plaintiffs,

- against -

NATHAN ISEN, *et al.*,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DANE FINE ART, LLC'S AND NATHAN ISEN'S MOTION TO SEVER AND TRANSFER (ECF NO. 19)**

Dated: November 6, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Luke Nikas (*pro hac vice pending)*
295 5th Avenue, 9th Floor
New York, NY 10016
Tel.: (212) 849-7000
lukenikas@quinnemanuel.com

Erica L. Perdomo (Fla. Bar No. 105466)
Daniel Humphrey (Fla. Bar No. 1024695)
2601 South Bayshore Dr., Suite 1550
Miami, FL 33133
Tel.: (305) 402-4880
ericaperdomo@quinnemanuel.com
danielhumphrey@quinnemanuel.com

*Attorneys for Plaintiffs*

Plaintiffs SOFLAC Associates, LLC; RMP Investments, LLC; McAndrew Phillips & Company 401K Plan; Judy Perlman; and Richard M. Perlman (together, "Plaintiffs"), by and through undersigned counsel, submit this Memorandum of Law in Opposition to the Motion to Sever and Transfer by Defendants Dane Fine Art, LLC ("Dane") and Nathan Isen (ECF No. 19).

## INTRODUCTION

The Court should deny the motion by Defendants Dane Fine Art, LLC and Nathan Isen (collectively, the "Dane Defendants"), which asks this Court to sever Plaintiffs' claims against the Dane Defendants from their claims against the other Defendants in this action—even though they are the same claims—and transfer them to the Eastern District of Pennsylvania. This request comes before a single document has been produced in discovery or any Defendant has answered the Complaint. Courts often decline to consider severance at the initial pleading stages. Where courts do take up severance at this stage, the analysis is limited to the four corners of the Complaint. The Dane Defendants nevertheless supply a hodge-podge of extrinsic evidence that is neither timely nor relevant to their requests for severance or transfer.

As stated in the Complaint, Plaintiffs lost more than $6.7 million purchasing forged artworks in South Florida through a Miami gallery. Defendants are the suppliers, distributors, and authenticators who conspired to create the forgeries, misrepresent their provenance and authenticity, and supply them to be sold as authentic Andy Warhol works to the unknowing victims of their fraudulent scheme. Dane Fine Art, a gallery that acted as a source of the supply of fraudulent works to Plaintiffs in Florida and active participant in the scheme, and Nathan Isen, the owner and operator of Dane, were an integral part of that scheme.

Neither the requirements for severance under Rules 20 and 21 nor the considerations governing transfer under 28 U.S.C. § 1404(a) justify the relief the Dane Defendants seek. Severance is not appropriate in this case, and certainly not at this stage of the proceedings.

Plaintiffs' claims arise from one logically related series of transactions and turn on common questions about the nature of the misrepresentations and how and when each Defendant joined the enterprise. The Complaint alleges six causes of action against each of the eight defendants. The law favors judicial economy, consistent results, and fundamental fairness. Severing the claims against the Dane Defendants from the identical claims against their co-conspirators into two actions, each with the identical six causes of action, would undermine each of those principles.

Because the claims against the Dane Defendants should not be severed, the Court need not reach the issue of transfer. Nonetheless, transfer fails on its own terms. This Court has jurisdiction over the Dane Defendants and venue over Plaintiffs' claims. The Dane Defendants essentially seek transfer for their own convenience, despite the inconvenience to Plaintiffs and the presumption in favor of Plaintiffs' choice of forum. Here, depriving Plaintiffs of their chosen forum is not justified.

## BACKGROUND

This action arose from a multimillion-dollar scheme in which Defendants, including the Dane Defendants, supplied forged Andy Warhol artworks to non-party MFAG, which sold them to Plaintiffs as authentic works obtained directly from the Foundation. Compl. ¶¶ 1, 9, 20. Defendants formed a network of suppliers, fake authenticators, and distributors who performed distinct roles in a coordinated scheme to sell forged works to unwitting buyers. *Id.* ¶¶ 1, 49–54. Plaintiffs lost more than $6.7 million for the purported Warhol artworks. *Id.* ¶ 9.

The scheme operated—at least partially—through MFAG and its principal, Leslie Roberts, in Miami. Plaintiffs met Roberts at his gallery in February 2023, and he represented that he could acquire authentic Warhols directly from the Foundation at discounted prices. *Id.* ¶¶ 57–60. In August 2023, MFAG and Plaintiff SOFLAC Associates, LLC ("SOFLAC") entered into a joint venture agreement to acquire and sell artwork, including purported Foundation inventory. *Id.* ¶¶ 65–72. Roberts offered works to Plaintiffs, who wired payments to MFAG in reliance on

representations that the works came from the Foundation. *Id.* ¶¶ 7, 64, 72. SOFLAC and Richard and Judy Perlman are Florida citizens, and Matthew Perlman, SOFLAC's Vice President, dealt directly with Roberts concerning the purchases. *Id.* ¶¶ 8, 22, 25–26, 57–60.

Dane was a consistent supplier to MFAG. The Complaint identifies numerous works that Dane invoiced to MFAG and that MFAG subsequently sold to Plaintiffs, often within days or weeks. *Id.* ¶¶ 73–84. It also alleges communications between Isen and Roberts concerning the movement, sale, and disposition of those works. In June 2023, Isen texted Roberts that he had "the queen all ready for u in Boca [Raton, Florida] for pick up," referring to a purported Warhol "Queen Margrethe II" that MFAG later sold to Plaintiffs. *Id.* ¶ 74. Regarding a purported "Sarah Bernhardt," Isen told MFAG that he needed to sell the work to "get out of Hock." *Id.* ¶ 77. And when Roberts planned to consign a purported "White Queen" sourced from Dane to a public auction, Isen objected to prevent independent expert scrutiny. *Id.* ¶ 93.

One transaction directly connects Dane's supply of artwork to MFAG's fabricated Foundation provenance. On May 2, 2024, Dane invoiced MFAG for a purported "Warhol Paloma Picasso." *Id.* ¶ 103. One week later, "Alex Herman"—a fictitious Foundation representative created and impersonated by Roberts—offered the same work to Plaintiffs, citing a purported credit from its previous owner, later identified as Isen and Dane. *Id.* ¶¶ 8, 101–03. Roberts separately emailed "Herman" at the fraudulent Foundation address, stating, "I know Dane owes alot to you in past commitments." *Id.* ¶ 102. Plaintiffs subsequently purchased the work. *Id.* ¶ 79.

Dane was not MFAG's only supplier. The Complaint alleges that Oscar Cordova supplied forged canvases, Allan Dampf and WarholandFriends LLC supplied purported Warhol "trial proofs," Edward Kurstak supplied forged works and affixed false authentication stamps to works from other channels, and Luis Alberto Pulido Torres and Mario Huapaya manufactured forgeries

in Peru and shipped them to MFAG. *Id.* ¶¶ 49–54, 85–89. Although the works came from different sources, MFAG sold them to the same Plaintiffs under the same false Foundation provenance, supported by purported Foundation invoices, authentication materials, and communications from "Herman." *Id.* ¶¶ 54, 90, 94–109, 144. These suppliers performed distinct but complementary roles in the same enterprise, with Roberts and MFAG serving as the common retail operation through which the works were sold and Plaintiffs' payments collected. *Id.* ¶¶ 54, 163–64.

The fraud centered on transactions in Florida. MFAG received the works, marketed them to Plaintiffs, communicated their purported Foundation provenance, and collected Plaintiffs' payments. *Id.* ¶¶ 57–90, 165. When Christie's examined works in Plaintiffs' collection in December 2023 and raised concerns about authenticity, Roberts continued to defend the works and arranged for purported Phillips representatives to examine them at the Perlmans' Florida home. *Id.* ¶¶ 11–17, 113–18. Phillips later confirmed that those individuals were not its employees. *Id.* ¶¶ 14–17, 118.

On August 29, 2024, Plaintiffs sued Roberts, MFAG, and "Herman" in Miami-Dade Circuit Court (the "Roberts Action"). ECF No. 19 at 10–11. Defendants in the this action—including the Dane Defendants—were not parties to that case. Roberts was subsequently indicted in this District, and pled guilty to Conspiracy to Commit Wire Fraud. Compl. ¶¶ 20, 120; Plea Agreement, *United States v. Leslie Howard Roberts*, No. 1:25-cr-25-20142-RKA-1, ECF No. 77 (S.D. Fla. June 17, 2026).

Plaintiffs filed this action on September 9, 2026, in the Complex Business Litigation Division of the Miami-Dade Circuit Court. *SOFLAC Assocs., LLC v. Isen*, No. 2026-018377-CA-01 (Fla. 11th Cir. Ct. Oct. 9, 2026). Defendants removed it to this Court. ECF No. 1. Plaintiffs' Complaint asserts six causes of action against all Defendants, including aiding and abetting fraud,

civil conspiracy, and violations of federal and Florida RICO statutes. Compl. ¶¶ 121–78. Four of the Defendants reside in Florida and four reside outside of Florida. *Id.* ¶¶ 29–36.

This action is at the earliest pleading stage and the only responsive filing on the docket is the Dane Defendants' motion to dismiss. After moving to dismiss, the Dane Defendants filed the Motion to Sever and Transfer, attaching a declaration and multiple exhibits that they purport go to the authenticity of the works sold to MFAG. ECF No. 19 at 8–10, 12–13. [1]

## LEGAL STANDARD

Joinder is "strongly encouraged[,]" and the rules are construed generously "toward entertaining the ***broadest*** possible scope of action consistent with fairness to the parties[.]" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (emphasis added). When evaluating an early-pleading-stage motion to sever, courts generally accept the allegations in the complaint as true and decline to consider outside evidence. *Gokdogan v. Slap Shot Pizza Enters. Ltd.*, No. 20CV5201MKBST, 2021 WL 4441417, at *12 n.9 (E.D.N.Y. Sept. 27, 2021) ("[B]ecause this motion to sever was briefed before discovery, the Court declines to consider [defendant]'s supporting affidavit and accepts all factual allegations in the Complaint as true."). *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 17-CV-391, 2017 WL 10718329, at *3 (D. Conn. Sept. 18, 2017) (stating that "[c]courts take allegations in a complaint as true for purposes of deciding a motion to sever," declining to consider evidence outside of the complaint "at this early stage of

[1] The Dane Defendants' Motion goes well beyond the Complaint, relying on disputed facts and extrinsic materials to argue the merits of Plaintiffs' claims. See ECF No. 19 at 8–13. The Motion also contains factual inaccuracies and mischaracterizations that Plaintiffs do not address individually here because they are not relevant to whether severance or transfer is appropriate. Plaintiffs dispute those assertions, which can be addressed through discovery and at the appropriate stage of the case.

the proceedings before the parties have had the opportunity for factual development through discovery").

Pursuant to Rule 21, the court may "sever any claim against a party." Fed. R. Civ. P. 21. Courts have broad discretion to determine whether severance is appropriate. *Mata v. Expedia Grp., Inc.*, No. 19-22529-CIV, 2026 WL 2595226, at *3 (S.D. Fla. Mar. 10, 2026). When reviewing a defendant's motion to sever, courts in this Circuit look to Rule 20(a)(2), which governs joinder of defendants, and weigh four discretionary factors: "judicial economy, prejudice to the parties, fairness, and the use of different evidence for plaintiffs' claims." *Id.*, at *3 (citing *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1326–27 (S.D. Fla. 2014)).

Where a motion to transfer is involved, prior to severing, "the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1352 (S.D. Fla. 2017) (quoting *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 111 (3d Cir. 2009)). The court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Id.* at 1353 (finding that the relevant factors weigh against severance and transfer because transfer would result in "the same facts and issues being litigated in ***three*** different judicial districts") (emphasis in original).

When considering transfer of venue, "a plaintiff's initial choice of forum, if a proper venue, is [] given substantial deference." *Fed. Deposit Ins. Corp. for Orion Bank of Naples, Fla. v. Nason Yeager Gerson White & Lioce, P.A.*, No. 213CV208FTM38UAM, 2013 WL 12200968, at *4 (M.D. Fla. July 22, 2013) (citations omitted). Courts consider multiple factors when determining

whether transfer is justified under 28 U.S.C. § 1404(a), including "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *McCullough*, 268 F. Supp. 3d at 1354 n.11.

## ARGUMENT

### I. SEVERANCE IS IMPROPER BECAUSE PLAINTIFFS SATISFY RULE 20(a)(2)

The Dane Defendants argue that joinder is improper because each supplier provided different artworks through separate transactions and had no direct dealings with the other suppliers. ECF No. 19 at 16–19. Even assuming, *arguendo*, that were true, Rule 20(a)(2) permits joinder where claims against defendants arise from the same "transaction, occurrence, or series of transactions or occurrences" and share "any question of law or fact." Fed. R. Civ. P. 20(a)(2). Both requirements are satisfied here.

The Eleventh Circuit applies the "logical relationship" test to Rule 20's transaction-or-occurrence requirement. *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds by *Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003). The test is a "loose" one, permitting "a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979) (citation omitted). For purposes of the test, the term "transaction" may encompass "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Alexander*, 207 F.3d at 1323 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)) (upholding joinder of eighteen employees alleging distinct discriminatory acts

because their claims arose from the same pattern of misconduct); *see also Mata*, 2026 WL 2595226, at *14–16 (denying severance where claims involving different properties and individualized proof arose from logically related series of business activities). Thus, the inquiry is not whether each Defendant participated in a single occurrence, but whether their conduct forms a logically related series of occurrences.

Here, the Complaint alleges that a network of suppliers, fake authenticators, and distributors engaged in a coordinated RICO scheme to supply forged Warhol artworks through MFAG. Compl. ¶¶ 1, 49–54. Dane and Isen supplied forged works and false authentication materials; other Defendants supplied forged canvases, purported trial proofs, and authentication stamps. *Id.* ¶¶ 50–54, 73–89, 92. Kurstak affixed false authentication stamps to works from other supply channels, further connecting the suppliers' activities. *Id.* ¶¶ 52, 88, 142. MFAG sold the works to Plaintiffs under the same fabricated Foundation provenance, supported by purported Foundation invoices and communications from the fictitious "Herman." *Id.* ¶¶ 54, 90, 94–109, 144. Defendants' pattern of misconduct ran through the same intermediary, relied on the same fabricated information, and defrauded the same Plaintiffs—forming a common core of activity that resulted in injury to Plaintiffs. *See Alexander*, 207 F.3d at 1324 (upholding joinder of eighteen plaintiffs whose individual claims involved different discriminatory acts because they arose from the same pattern of misconduct and shared a common factual basis).

Indeed, the Complaint specifically alleges Dane's logical relationship to the series of transactions and occurrences at issue. Isen arranged for a "Queen" to be picked up in Boca Raton, told MFAG he needed to sell "Sarah Bernhardt" to "get out of Hock," and objected to Roberts's proposed public auction of a Dane-supplied "White Queen." Compl. ¶¶ 74, 77, 93. More directly, shortly after Dane invoiced MFAG for "Paloma Picasso," Roberts, offered the same work to

Plaintiffs while invoking a purported credit associated with Isen and Dane. *Id.* ¶¶ 101–03. Roberts also wrote to the fictitious Foundation representative, "I know Dane owes alot to you in past commitments." *Id.* ¶ 102. Dane's motion does not address these allegations, which connect its conduct to the purported Foundation provenance used to induce Plaintiffs' purchases.

The Dane Defendants' authorities are distinguishable. *Kang v. Benning GF, LLC*, 2017 WL 346009, at *1 (M.D. Ga. Jan. 23, 2017), involved independent FLSA overtime-wage claims arising from employment at two separate grocery businesses. Likewise, *Ewing v. Empire Capital Funding Group, Inc.*, 2019 WL 1746575, at *1–2 (S.D. Cal. Apr. 17, 2019), involved unrelated telemarketers who, in the court's words, had "nothing in common except that they all happen to be telemarketers" and allegedly violated the TCPA "on separate occasions and in unrelated ways." Neither case involved a claim of a RICO enterprise or civil conspiracy, or any allegation connecting the defendants' transactions through a common scheme. Here, by contrast, the suppliers provided works to the same gallery, which sold them to the same Plaintiffs using the same fabricated Foundation provenance. *See Atchison v. Woodmen of the World Ins. Soc'y*, 982 F. Supp. 835, 839–40 (S.D. Ala. 1997) (finding joinder proper where an insurer and its agents participated in a common fraudulent sales scheme, notwithstanding separate transactions and the fact that each defendant had not injured each plaintiff); *see also SEC v. Ignite Int'l Brands, Ltd.*, No. 24-CV-7331 (VM) (OTW), 2026 WL 2476015, at *2–3 (S.D.N.Y. Aug. 24, 2026) (denying severance where defendants allegedly played different roles in a single fraudulent scheme because their conduct was logically related and separate proceedings would duplicate discovery and trial). Rule 20 does not require direct communications among every defendant, only a logically related series of transactions.

The second Rule 20 requirement is also satisfied. Rule 20 requires "only that *some* question of law or fact be common to all parties;" it "does not require that all questions of law and fact raised by the dispute be common." *Alexander*, 207 F.3d at 1324 (emphasis in original). Dane contends that the claims share only the same causes of action. ECF No. 19 at 18. But Roberts and MFAG's conduct is central to the claims against every Defendant: Roberts and MFAG acquired the works, represented that they came from the Foundation, arranged their sale, and collected Plaintiffs' payments. Compl. ¶¶ 54, 57–109. Whether the purported Foundation provenance was fabricated, how it was used to induce Plaintiffs' purchases, and whether Defendants participated in the enterprise are common factual questions. *Id.* ¶¶ 90–109, 144, 163–70.

Those facts also present common legal questions. Plaintiffs assert aiding and abetting fraud, civil conspiracy, and federal and Florida RICO claims against Defendants. *Id.* ¶¶ 121–78; *see also Martinez-Lopez v. GFA Alabama Inc.*, 797 F. Supp. 3d 1309 (N.D. Ga. 2025) (denying severance and transfer where claims arose from the same alleged RICO enterprise and separate proceedings would duplicate discovery; finding severance premature before discovery). The RICO claims concern the existence of the enterprise and pattern of racketeering activity, including the roles of Roberts, MFAG, and the suppliers. *Id.* ¶¶ 154, 163–70. Whether the enterprise and pattern satisfy RICO's requirements is a common legal question, even if establishing each Defendant's participation requires individualized proof. *See Mata*, 2026 WL 2595226, at *15–16. Plaintiffs also seek joint and several liability for damages arising from the scheme. Compl. ¶ 178 & Prayer for Relief ¶ b.

Dane's assertion that proving the claims against the other suppliers would have no bearing on its liability, ECF No. 19 at 19, disregards the common allegations concerning the enterprise, fabricated provenance, and Roberts's and MFAG's conduct. The separate transactions and

defenses identified by Dane do not eliminate the logical relationship among the claims or the common questions they present. Both requirements of Rule 20(a)(2) are satisfied.

## II. Severance Does Not Promote Judicial Efficiency Under Rule 21

The Dane Defendants alternatively argue that severance is appropriate under Rule 21 because their claims and defenses involve different witnesses and evidence. ECF No. 19 at 19–20. The discretionary factors—judicial economy, differences in proof, prejudice, and fundamental fairness—confirm that the claims should travel together. *See Mata*, 2026 WL 2595226, at *13. "[T]he touchstone of Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did." *Acciard v. Whitney*, No. 2:07-CV-476-UA-DNF, 2008 WL 5120820, at *1 (M.D. Fla. Dec. 4, 2008) (quotation omitted). Courts should not sever claims or parties where partial transfer would require the same issues to be litigated in two places. *McCullough*, 268 F. Supp. 3d at 1352–53.

*Judicial economy*. Severance would create precisely the inefficiency that *McCullough* warns against. Dane and Isen are based in Pennsylvania, but four other Defendants reside or conduct business in Florida, and two reside in Peru. Compl. ¶¶ 29–36. The fraud operated through MFAG in Miami, where Roberts acquired works from the suppliers, represented that they originated from the Foundation, and collected Plaintiffs' payments. *Id.* ¶¶ 54, 57–109. Isen arranged with MFAG to send a Dane-supplied work to Florida. *Id.* ¶ 74. Even if the claims against the Dane Defendants were severed, this action would proceed against the other Defendants on the same claims that the Dane Defendants seek to sever. Because the Defendants all participated in the same scheme, the conduct of the Dane Defendants would remain relevant to this action, where the Dane Defendants would likely be served third-party discovery requests, noticed for deposition,

and listed as trial witnesses. Severance would create significant judicial inefficiency and impose undue burden on both courts.

*Overlapping proof.* The witnesses and evidence likewise overlap and extend beyond Pennsylvania. Common evidence includes MFAG's purchasing records, the joint venture agreement, purported Foundation invoices, and communications involving the fictitious "Herman." Compl. ¶¶ 65–72, 90, 94–109. Roberts and Plaintiffs are central witnesses whose testimony concerning the transactions, provenance representations, and Plaintiffs' reliance would overlap between proceedings. The Boca Raton pickup arrangement also implicates evidence concerning the movement of Dane-supplied artwork into Florida. And because Dane's participation would remain relevant to the Florida claims, Dane and Isen will still face discovery here while defending a separate action in Pennsylvania. That the Dane Defendants intend to defend the claims against them based on evidence from Christie's and other auction houses—information that falls outside the scope of the Court's consideration at this stage—does not negate the significant overlap in proof Plaintiffs must offer against all of the Defendants. *See* ECF No. 19 at 19–20.[2]

Courts have denied motions to sever where distinct transactions arose from a common scheme or presented central overlapping issues. In *Acciard*, the court denied severance because the claims arose from "one alleged fraudulent scheme," finding that joinder would "promote judicial economy" without prejudice. 2008 WL 5120820, at *4; *see also Fed. Deposit Ins. Corp. v. Stewart Title Guar. Co.*, 2013 WL 12155930, at *1 (M.D. Fla. Mar. 27, 2013) (denying severance of claims despite separate underlying transactions because the claims shared a central

---

[2] Nor do the other "potentially" relevant witnesses or "sources of records" listed in Dane's supporting affidavit. *See* ECF No. 19-1 ¶ 17–18. As discussed below, Dane has not shown that any of these witnesses would be unwilling to testify or provide relevant information.

issue). And *McCullough* rejected severance and transfer of claims against defendants located in different jurisdictions because doing so would require the same facts and issues to be litigated in multiple districts. 268 F. Supp. 3d at 1352–53.

The Dane Defendants' authorities do not support severance and are distinguishable from the facts and circumstances of this action. *Essex Insurance Co. v. Kart Construction, Inc.*, 2015 WL 628782, at *5–7 (M.D. Fla. Feb. 12, 2015), and *E. Cornell Malone Corp. v. Sisters of the Holy Family*, 922 F. Supp. 2d 550, 562–63 (E.D. La. 2013), both involved the severance of distinct claims with little legal or evidentiary overlap. Specifically, claims of negligence brought alongside an unrelated insurance coverage dispute (*Essex*) and claims related to a payment dispute pertaining to certain defendants brought alongside construction-related claims against a much larger group of defendants (*E. Cornell Malone*). And in *Breaking Glass Pictures, LLC v. Does 1–99*, 2013 WL 8336085, at *3–4 (N.D. Ga. Apr. 12, 2013), Defendants were unidentified online users, and the court's decision to sever was based on the unique logistical hurdles presented in that action. Unlike those cases, where the severed claims related to distinguishable transactions and occurrences, or the defendants were unidentifiable, the Dane Defendants partook in a single fraudulent enterprise that gave rise to Plaintiffs' claims against the eight Defendants. Much of the proof required for Plaintiffs to prove their claims will be identical as to all Defendants.

*Prejudice and fundamental fairness*. Finally, Dane identifies no concrete prejudice or jury confusion warranting severance. Individualized evidence and defenses can be addressed through limiting instructions and an appropriately structured verdict form. *See Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 543–44 (S.D. Ala. 2007) (rejecting severance based on individualized evidence and defenses because juries can distinguish among claims and any risk of prejudice can be addressed through limiting instructions). By contrast, severance here would

duplicate discovery and testimony, increase litigation costs, and risk inconsistent findings concerning the enterprise, conspiracy, and damages. And even if some individualized proof will be required as to Dane, that alone does not warrant severance: in *Mata*, the court found that the different-proof factor favored severance yet denied the motion because the Rule 20 factors and judicial economy weighed against it. 2026 WL 2595226, at *16. Rather than promote efficiency, severance here would create the exact inefficiencies courts in this Circuit have cautioned against. *See McCullough*, 268 F. Supp. 3d at 1352–53.

## III. THE MOTION IS PREMATURE AND SHOULD BE DENIED

Courts in this Circuit regularly decline to sever claims before the parties have engaged in discovery. *See Gibson v. MHHS-Sinsations, LLC*, No. 3:17-CV-1168-J-20JBT, 2018 WL 3625783, at *2 (M.D. Fla. June 21, 2018) (denying motion to sever as premature where discovery had not commenced finding that "judicial economy, fundamental fairness to the parties, and so on, are best served by allowing the Plaintiffs to proceed jointly at this time"); *Bernstein v. R&B Amusements Inc.*, No. 3:16-cv-0073-MCR-EMT, 2016 WL 9229843, at *1 (N.D. Fla. May 9, 2016) ("[A]t this early stage in the case it is premature to sever the individual Plaintiffs."). Courts outside this Circuit have likewise denied severance as premature before discovery is complete. *See Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 505 (S.D.N.Y. 2013) (denying motion to sever or transfer as premature because case was in the pleading stage and there was too much uncertainty regarding defendants); *Harris v. Akron*, No. 5:23-CV-1290, 2023 WL 7924816, at *3 (N.D. Ohio Nov. 16, 2023) (denying motion to sever because "before discovery is completed, any severance order would be premature"). In many cases, "further discovery may very well uncover" more information warranting or combating severance. *Harris*, 2023 WL 7924816, at *3.

Plaintiffs anticipate that discovery in this case will support joinder and proceeding in Plaintiffs' chosen forum. It would be premature to sever the Dane Defendants before Plaintiffs have received discovery relevant to their claims.

## IV. Transfer Pursuant to 28 U.S.C. § 1404(a) Is Not Appropriate

If the Court declines to grant severance, then there is no standalone case to transfer and movants' transfer arguments would be mooted. If there was a standalone case, transfer to the Eastern District of Pennsylvania is improper because "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B 1981)); *see also Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1277 (S.D. Fla. 2020) ("[A] plaintiff's choice of forum is accorded considerable deference."). Likewise, every factor of 28 U.S.C. § 1404(a) supports the conclusion that Plaintiffs' claims against the Dane Defendants should remain in this District.

*Plaintiff's choice of forum*. There is a "strong presumption" against disturbing a plaintiff's initial forum choice. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). That presumption should not be disturbed here. The Dane Defendants argue that Plaintiffs' choice of forum should be given less consideration because the operative facts did not occur in this District. ECF No. 19 at 23–24. That assertion is simply untrue, as Florida is the nexus of the fraud. Beyond that, several facts specific to Dane and Isen occurred in this District, including shipping forged artwork into it. Plaintiffs' choice of forum strongly weighs against transfer to Pennsylvania.

*Convenience of witnesses*. The convenience of potential witnesses does not favor transfer here, where there has been no showing of inconvenience to any potential witness and the identity of witnesses is largely unknown. In support of this factor, the Dane Defendants identify three potential trial witnesses—employees of the auction houses Christie's, Rago, and Doyle—

apparently in Manhattan and New Jersey. ECF No. 19 at 22. The Dane Defendants argue, unconvincingly, that the locations of these witnesses support transfer away from Plaintiffs' choice of forum simply because Manhattan and New Jersey are closer to Philadelphia than to South Florida. But the Dane Defendants have offered no evidence that the theoretical witnesses would be inconvenienced by testifying in the Southern District of Florida, where Christie's and Doyle have offices and Rago regularly conducts business.[3] The witnesses may very well reside full or part time in South Florida, travel here frequently, or find it more convenient to testify in Miami than in Philadelphia.

The Court should not credit the Dane Defendants' speculation about possible inconvenience to potential witnesses, and even if it did, any inconvenience would be outweighed by the inconvenience that a Pennsylvania action would cause for the many Florida witnesses.

*Availability of witnesses*. When assessing whether the unavailability of witnesses militates in favor of transfer, the Court need look no further than the absence of any assertion by the Dane Defendants that any out-of-District witness is unwilling to testify. *See Fruitstone*, 464 F. Supp. 3d at 1281 (denying transfer of venue where "the movant does not show that the witnesses would be unwilling to testify and that compulsory process would be necessary"). The Court should not give any weight to this factor. Although the Court's inquiry should stop where there is no demonstration of unwillingness to testify on the part of witnesses, the Dane Defendants' argument continued. In support of this factor, the Dane Defendants incorrectly assert that the auction house employees are not subject to the subpoena power of this District. ECF No. 19 at 24–25. However, as noted above,

---

[3] *See Palm Beach / Florida Location*, Doyle, https://doyle.com/locations/florida/ (last visited Nov. 5, 2026); *Christie's Palm Beach*, Christie's, https://www.christies.com/en/locations/palm-beach (last visited Nov. 5, 2026); *Upcoming Auctions & Events*, Rago Arts and Auction, https://www.ragoarts.com/auctions (last visited Nov. 5, 2026).

Christie's, Doyle, and Rago do business in this District. Rule 45 permits a subpoena to command attendance at trial within 100 miles of where a person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). Dane has not shown that the auction houses it identified could not make knowledgeable witnesses available here, or that its identified witnesses do not regularly transact business in the District. This factor does not support transfer.

*Location of relevant documents and locus of operative facts*.[4] The Dane Defendants argue that transfer is favored because "[s]ome of the Warhol art at issue" is "physically stored" in Pennsylvania. ECF No. 19 at 22. The Dane Defendants do not assert that it would be difficult to transport that evidence to Florida. To the contrary, they assert that the art "was repurchased by Dane" and is currently "in Pennsylvania." *Id.* That art has already traveled from Pennsylvania to Florida and back again, demonstrating its portability. *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *8 (S.D. Fla. Oct. 16, 2017) (denying transfer of venue where "[d]efendants have not pointed to any relevant records that would be difficult to transport to this forum"). That "some" artworks are located in Pennsylvania is no reason to transfer this action away from Plaintiffs' chosen forum, especially when most of the works at issue are in this District, where they were sold to Plaintiffs. *See Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-CV-80813-KMM, 2012 WL 243764, at *5 (S.D. Fla. Jan. 25, 2012) (finding the locus of operative facts factor is "at best neutral" where the operative facts arise from activities in both plaintiff's chosen forum and defendant's transfer forum).

The Dane Defendants do not deny that there is relevant evidence in Florida. The Dane Defendants invoiced MFAG in Florida for forged artworks, shipped forged artworks to Florida,

---

4 The Dane Defendants address these factors together. ECF No. 19 at 22–23. Plaintiffs do the same for consistency.

and misrepresented the provenance of works sold to Plaintiffs in Florida. Compl. ¶¶ 73–84, 110–11, 165. Florida is where Plaintiffs came across the forged artwork, negotiated for the purchase of additional forged works, and wired money for all of their purchases from MFAG. *Id.* ¶¶ 57–60, 72, 167(a). The location of documents does not support transfer.

*Convenience of the parties*. This factor also weighs against transfer. The Dane Defendants admit that Plaintiffs—the victims of the fraud—would be "inconvenienced by transfer." ECF No. 19 at 23. Where a transfer "merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (quoting *Eye Care International, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000)). Here, where transfer would merely shift the inconvenience from the Dane Defendants to Plaintiffs, the case should remain in Plaintiffs' chosen forum.

The Dane Defendants also complain that their counsel is located in Pennsylvania. ECF No. 19 at 23. The Dane Defendants cannot retain Pennsylvania-based counsel to defend a lawsuit in Florida and then use that fact to support an argument for transfer. *Mason*, 146 F. Supp. 2d at 1361 (denying transfer of venue where convenience to defendants did not weigh heavily in favor of transfer even though "a transfer would prevent the disruption of Defendant's litigation team, which has already been assembled in California"). Convenience to the parties does not support transfer.

*Relative means of the parties*. This factor too weighs against transfer because the Dane Defendants have the means to litigate in this District. Relative means depends on "the parties' financial means and their respective abilities to conduct litigation in a distant forum." *Microspherix*, 2012 WL 243764, at *5 (finding this factor neutral where little is known about each party's financial means). Here, little is known about each party's financial means, but what is known does not support transfer. The Dane Defendants point to Plaintiffs' ability to spend "nearly

$7 million on art from MFAG" as evidence that Plaintiffs can afford to litigate outside of their chosen forum. ECF No. 19 at 25. But the same can be said of Dane and Isen. Dane is a gallery purporting to sell extremely expensive works of art. Compl. ¶¶ 20, 73. And Isen holds himself out as a sophisticated and wealthy art dealer. Compl. ¶¶ 42, 45. Relative means is no reason for transfer.

*Florida's familiarity with governing laws*. The Court should deny transfer based on this factor alone. This District has more experience with Florida law, which governs the Florida state claims in this case. *Exotropin, LLC v. DP Derm, LLC*, No. 25-CV-20713, 2025 WL 2306200, at *9-10 (S.D. Fla. Aug. 11, 2025) (denying transfer and finding that familiarity with governing law weighs against transfer because while both districts are familiar with federal causes of action, "the same cannot be said for the Florida law claims"). By contrast, there are no claims based on Pennsylvania law. This case should remain in Florida. *Id.* at *10 ("Because only a Utah court would be required to interpret and apply out-of-state statutory claims, this case is better suited to remain in Florida.").

*Judicial efficiency*. This District's strong judicial efficiency weighs against this Court transferring venue. "[T]he Southern District of Florida is statistically one of the most efficient districts—a fact that militates against transfer." *TocMail Inc. v. Microsoft Corp.*, No. 20-60416-CIV, 2020 WL 12442001, at *3 (S.D. Fla. Oct. 15, 2020) (denying transfer of venue). The Court considers "administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." *Exotropin*, 2025 WL 2306200, at *10 (quoting *Rothschild Connected Devices*

*Innovations, LLC v. Coca-Cola Co.*, CASE NO. 15-24067-CIV, 2016 WL 1546427, at *7 (S.D. Fla. Apr. 15, 2016)).

This District also has an interest in adjudicating claims based on an art fraud perpetuated in this District, through a co-conspirator gallery located in Coconut Grove, Florida, that defrauded Florida residents. Compl. ¶¶ 22, 25–27, 57.

## CONCLUSION

The Court should deny the Dane Defendants' Motion to Sever and Transfer Pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a).

Dated: November 6, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Erica Perdomo
Erica L. Perdomo (Fla. Bar No. 105466)
Daniel Humphrey (Fla. Bar No. 1024695)
2601 South Bayshore Dr., Suite 1550
Miami, FL 33133
Tel.: (305) 402-4880
ericaperdomo@quinnemanuel.com
danielhumphrey@quinnemanuel.com

Luke Nikas (*pro hac vice pending)*
295 5th Avenue, 9th Floor
New York, NY 10016
Tel.: (212) 849-7000
lukenikas@quinnemanuel.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November, 2026, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By: *<u>/s/ Erica L. Perdomo</u>*
Erica L. Perdomo
Florida Bar No. 105466
ericaperdomo@quinnemanuel.com