**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **SOFLAC Associates, LLC, et al.,**<br>*Plaintiffs,*<br>**v.**<br>**Nathan Isen, et al.**<br>*Defendants.* | **Civil Action No. 26-cv-27124-DSL**<br>**ORAL ARGUMENT REQUESTED** |

**DANE DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO SEVER AND TRANSFER**

## I. INTRODUCTION

In opposing severance and transfer, Plaintiffs attempt to recast separate series of transactions as a "common core of activity." But their Complaint alleges only that Defendants each dealt with the same nonparties, not that they coordinated with each other. Nor is Plaintiffs' choice to bring the same claims against all Defendants enough to create a common legal question among them. The Complaint alleges different art forgeries and fabrications by each Defendant as well as different interactions with non-party Leslie Roberts from different locations. Defendants repeat it *ad nauseum* herein. That is because these facts—coupled with Defendants' lack of interaction—are fatal to Plaintiffs' joinder arguments and render their case law inapposite. These facts similarly destroy their arguments against severance and transfer.

Plaintiffs' Opposition does not and cannot change the core facts, which all support severance and transfer. 1. There was no interaction between Defendants. 2.

The Dane side of the Dane Defendants' interactions with non-parties Les Roberts and Miami Fine Art Gallery ("MFAG") occurred in and around Philadelphia. 3. Plaintiffs already obtained extensive discovery from Roberts and MFAG: additional discovery and their participation at trial is not forthcoming with Roberts in prison and MFAG defunct. 4. Art in and near Philadelphia requires inspection. 5. The Dane Defendants' interactions with critical third parties who cannot be compelled to participate in trial in Florida occurred in and near Philadelphia.[1]

The prejudice from being forced to litigate in the Southern District of Florida with other defendants with whom they never interacted is real—not theoretical—and is already manifest, even at this early juncture. The Dane Defendants' motion to dismiss has been pending with no opposition since October 16, 2026, and Plaintiffs wish to tie their response to service on absent defendants the Dane Defendants never met or heard of and that Plaintiffs have still inexplicably failed to serve more than two months after filing this case. Dkt. Nos. 13, 15, 22, 25. This prejudice will only grow as the case proceeds towards trial, to the point that it could deprive the Dane Defendants of trial testimony of witnesses critical to their defense. Plaintiffs point to other courts that declined transfer because witnesses outside the Court's reach "might" agree to testify. *E.g.* Pls.' Br, Dkt. No. 28 p. 16. But that changes nothing. The Dane Defendants cannot know for sure that these witnesses will refuse to testify

[1] Without citation to any legal authority, Plaintiffs incorrectly claim that the Court can compel attendance of the *specific* witnesses identified by Kristopher Isen, Dkt. No. 19-1, when they do not regularly transact business in Florida and did not interact with the Florida parties in this case because their employers generally do business in Florida. *E.g.* Dkt. No. 28 pp. 16-17. Rule 45 does not allow that. The geographic limitation applies to the individual witness, not the employer.

until discovery has commenced and the case is close to trial-ready. But by that point, it will be too late and far more inefficient and burdensome to effectuate the transfer necessary to ensure the Dane Defendants have an opportunity to present a full and fair defense. This Court has discretion to reject that approach and should do so (like many other courts that severed and transferred pre-discovery and even where it resulted in parallel litigation in multiple forums).

Judicial efficiency and fairness militate in favor of severance and transfer now, not later.

## II. ARGUMENT

### a. Motion to Sever

Plaintiffs contend that the Complaint's allegations satisfy Rule 20(a)(2)(A)'s "transaction-or-occurrence" requirement because Defendants' alleged "pattern of misconduct ran through the same intermediary, relied on the same fabricated information, and defrauded the same Plaintiffs—forming a common core of activity that resulted in injury to Plaintiffs." Pls' Br. at 8. But the Complaint does not allege the Dane Defendants were involved in the "same transaction, occurrence, or series of transactions or occurrences" as any other Defendants. Fed. R. 20(a)(2)(A). Instead, Plaintiffs allege that Dane and Isen sold paintings to MFAG, Compl. ¶¶ 73–84, and that the other Defendants separately sold different forgeries and fabrications in distinct interactions. *Id.* ¶¶ 86–88; Dkt. No. 16 pp. 10–11 (citing Compl. ¶¶ 33-35, 45-46, 50-53, 86-88). Plaintiffs' pleading thus describes different series of transactions.

Plaintiffs' cases are inapposite. "[A]llegations of a 'pattern or practice'" of discrimination may describe the logically related events that satisfy Rule 20(a)(2)(A)'s

requirement. *Alexander v. Fulton Cnty.* 207 F.3d 1303, 1323 (11th Cir. 2000). Accordingly, joinder was proper in *Alexander*, where the relief sought was "based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame," *id.* at 1324, and *Mata v. Expedia Group. Inc.*, No. 19-22529, 2026 WL 2595226, at *14 (S.D. Fla.) where the plaintiffs alleged that the several defendants "undertook common efforts" and were "related in terms of ownership." *See also Mata v. Expedia Group. Inc.*, Case No. 19-22529, Dkt. No. 148 (Complaint) ¶¶ 8–13 (S.D. Fla).

Here, Plaintiffs seek to join multiple defendants who had zero interaction and are not alleged to have taken any common efforts. Plaintiffs attempt to link Defendants by way of Plaintiffs' interactions with non-parties Leslie Roberts and MFAG, with whom each Defendant allegedly dealt. But Plaintiffs' claims *against Defendants* cannot arise from Plaintiffs' subsequent interactions with non-parties that were already the subject of extensive discovery in a resolved case; they must arise from Defendants' conduct. And the Dane Defendants are not alleged to have participated jointly with other Defendants in any transaction or occurrence.

Isen's shipment of art for pickup in Boca and other communications on which Plaintiffs rely, Pls' Br. at 8-9 (citing Compl. ¶¶ 74, 77, 93, 101–103), do not connect the Dane Defendants' conduct "to the purported Foundation provenance," *id.*, or shift the nucleus of facts to Florida None of these communications reference the Foundation or denote any such representation. Nor do Plaintiffs plead that the Dane Defendants' misrepresentations or forgeries occurred in Florida, and the Dane

Defendants' communications all took place in Philadelphia. Plaintiffs' allegations establish no commonality between the Dane Defendants and the other Defendants.

Joinder of several defendants was proper in the remaining cases cited by Plaintiffs because the defendants themselves shared a common link. In *Atchinson v. Woodmen of the World Ins. Soc'y*, 982 F. Supp. 835, 837, 840 (S.D. Ala. 1997), the defendants were agents and employees of the same firm, who all participated in the firm's allegedly fraudulent marketing techniques. And in *SEC v. Ignite Int'l Brands, Ltd.*, 24-7331, 2026 WL 2476015, at *1 (S.D. N.Y. Aug. 24, 2026), each defendant played an interconnected role in the alleged scheme, working together *directly* and in coordination to formulate and disseminate fraudulent invoices. *Id.* at *1 (citations omitted). Here, Defendants neither worked for a common employer nor interacted.

Rule 20's second prong requires a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2); *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 839 (11th Cir. 2017). Plaintiffs assert that common factual issues here include "[w]hether the Foundation provenance was fabricated, how it was used to induce Plaintiffs' purchases, and whether Defendants participated in the enterprise." Defs' Br. at 10. But the "Foundation provenance" is not common to the Dane Defendants because they are not alleged to have represented that any works were sourced from the Andy Warhol Foundation. Roberts' *subsequent* fabrication and use of this provenance (1) is already established and (2) does not bear on Plaintiffs' claims against the Dane Defendants. Whether Defendants participated in an enterprise with Roberts is a question that differs among defendants for the same reason: the Dane

Defendants are not alleged to have worked *with* other Defendants; any participation in an enterprise could only be by way of their interactions with Roberts. The Complaint raises independent factual questions whether (1) Dane participated in an enterprise by dealing with Roberts and MFAG, and (2) whether the other Defendants separately participated in an enterprise by dealing with Roberts and MFAG through different interactions from a different location concerning different streams of art. Put simply, "Plaintiffs' broad, conclusory allegations of connectivity do not establish a sufficient connection *between* Defendants to permit joinder." *Omega, SA v. Individuals, Business Entities, and Unincorporated Associations*, 650 F. Supp. 3d 1349, 1353 (S.D. Fla. 2023) (emphasis added).

Nor are there common legal questions because Plaintiffs assert aiding and abetting fraud, civil conspiracy, and federal and Florida RICO claims against all Defendants. *Id.* Again, because the Dane Defendants are not alleged to have worked with the other Defendants, any questions regarding Plaintiffs' claims of aiding and abetting, conspiracy, or racketeering would be focused on each set of Defendants' separate interactions with Roberts and MFAG. This disconnect among Defendants stands in stark contrast to the cases on which Plaintiffs rely.

In *Martinez-Lopez v. GFA Alabama Inc.*, 797 F. Supp. 3d 1309, 1327, 1336 (N.D. Ga. 2025), plaintiffs alleged that GFA, which provided material handling services at a warehouse, conspired and entered a RICO enterprise with Glovis, which owned and operated the warehouse. Glovis and GFA contracted and worked together

directly to hire plaintiffs: Glovis was provided worker information by GFA, made firing decisions, and knew of GFA's allegedly wrongful tactics. *Id.* at 1335.

Plaintiffs further rely on *Mata*, 2026 WL 2595226, at *15–16 for the proposition that "[w]hether the enterprise and pattern satisfy RICO's requirements is a common legal question, even if establishing each Defendant's participation requires individualized proof." Defs.' Br. at 10. The plaintiffs in *Mata*, who asserted ownership interests in hotels and land that had been nationalized by the Cuban government, brought suit against a group of travel agencies and associated entities, alleging that the defendants had violated federal law against trafficking in expropriated properties. 2026 WL 2595226, at *1. Common questions among the defendants there, who shared common ownership, included whether they had a policy of seeking authorization from the properties' claimholders or a policy of selling reservations despite notice of claims, or whether they were shielded from liability by the "lawful travel defense." *Id.* at *15. Even so, plaintiffs' need for "significant individualized evidence to prove their claims" weighed *in favor of* severance. *Id.* at *16.

Here there is individualized evidence, as in *Mata*, but Plaintiffs' allegations *also* lack a similar common policy or defense among Defendants. And unlike the defendants in *Martinez-Lopez*, the Dane Defendants and other Defendants are not alleged to have worked *together*. Thus, the legal questions raised by Plaintiffs' claims are distinct as to each set of Defendants. Although they are all alleged to have committed the same torts by their dealings with Roberts and MFAG, "simply

committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *Omega, SA*, 650 F. Supp. 3d at 1353.

In any event, discretionary factors under Rule 21 support severance even if joinder was proper. Plaintiffs counter that severance would create inefficiency because "the conduct of the Dane Defendants would remain relevant to this action" and they "would likely be served third-party requests, noticed for deposition, and listed as trial witnesses." Pls' Br. at 11–12. But this argument is belied by their Complaint. Although Plaintiffs allege a scheme among Defendants and Roberts and MFAG, the Complaint does not allege coordination between the Dane Defendants and other Defendants. Therefore, the Dane Defendants' conduct would not be relevant to Plaintiffs' claims against the remaining Defendants. And Plaintiffs already obtained the relevant discovery on Roberts' subsequent interactions with Plaintiffs.

As overlapping proof, Plaintiffs cite "MFAG's purchasing records, the joint venture agreement, purported Foundation invoices, and communications involving the fictitious 'Herman.'" Pls' Br. at 12. But because the Complaint does not allege that Plaintiffs purchased works jointly from Dane Defendants and the other Defendants, and the purchasing records used to prove their claims will differ between the sets of Defendants. Plaintiffs already have MFAG's purchasing records from Dane, some of which are before this Court, and they do not relate to the other Defendants in any way. Nor do Plaintiffs allege the Dane Defendants represented that their works came from the Foundation, so this evidence has no bearing on their claims against the Dane

Defendants. And the Dane Defendants did not enter into the joint venture agreement with MFAG and SOFLAC Associates, LLC. Compl. ¶ 67.

Plaintiffs' claims differ from those in *Acciard v. Whitney*, No. 2:07-cv-476, 2008 WL 5120820, at *4 (M.D. Fla. Dec. 4, 2008), because – again – those defendants were alleged to have coordinated *with each other* in furtherance of "one alleged fraudulent scheme." And in *FDIC v. Stewart Title Guaranty Co.*, No. 8-12-2244, 2013 WL 12155930, plaintiffs identified a discrete legal issue governing all of their claims, *id.* at *1, while Plaintiffs here conclusorily submit that their decision to plead the same claims against all Defendants constitute common legal issues. Pls.' Br. at 10.

Finally, Plaintiffs' contention that severance is premature begs the question whether their suit raises the possibility of proper joinder. Pls' Br. at 14. In *Harris v. Akron*, No. 5:23-CV-1290, 2023 WL 7924816, at *3 (N.D. Ohio Nov. 16, 2023), on which they rely, the court had concluded that the plaintiffs' allegations satisfied Rule 20's transaction-or-occurrence and common question requirements before explaining that "[t]he case's early stage also weighs against severance." Here, as explained above, Plaintiffs' allegations do not satisfy these requirements. Moreover, many courts compellingly recognize that severing claims under Rule 21 is *best* done early in the litigation—before discovery begins—including because cases appear likely to focus on different witnesses and documentary evidence and appear destined for separate trials. *E.g. Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 376-79 (E.D. La. 2022).

Courts also routinely sever defendants and transfer cases against them where there is far more commonality between defendants and overlap of evidence than exists here even if it requires the plaintiff to pursue parallel litigation in two forums.[2]

**b. Motion to Transfer**

Plaintiffs again conflate Roberts' and MFAG's conduct with that of the Dane Defendants, against whom this suit is brought. Pls.' Br. at 15. Their Complaint alleges that the Dane Defendants, which are based in Pennsylvania, sold MFAG artworks, "manufactured at least some of them," and "provid[ed] false documentation." Compl. ¶¶ 74–84, 92, 111. These actions originated in Pennsylvania, where the Dane Defendants are based. *Id.* ¶¶ 29–30.

As to the location of evidence, Plaintiffs submit that "Florida is where Plaintiffs came across the forged artwork, negotiated for the purchase of additional forged works, and wired money for all of their purchases from MFAG." Pls' Br. at 18. Maybe so. But they resolved and obtained extensive discovery on that portion of their claim. The *Dane Defendants'* alleged conduct took place in Pennsylvania. Nor have Plaintiffs effectively refuted that relevant art and other physical evidence resides in Pennsylvania and the Northeast. *E.g.* Dkt. No. 19-1 ¶¶ 22-23. Therefore, the nexus of Plaintiffs' claims against the Dane Defendants is Pennsylvania.[3]

---

[2] *See, e.g., In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014); *In re Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017); *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28 (3d Cir. 1993); *Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir. 1968).

[3] Plaintiffs ignore other law cited by Defendants, such as law showing their forum is entitled to lesser deference because some of the Plaintiffs do not reside in Florida, as well as facts, such as the Eastern District of Pennsylvania being less busy and even quicker to try cases than the Southern District of Florida. The remaining 1404(a) factors, which Plaintiffs give short shrift, speak for themselves as does the thorough discussion in Defendants' opening brief.

Respectfully submitted,

*/s/Eduardo F. Rodriguez*
Eduardo F. Rodriguez (FL Bar No. 036423)
EFR Law Firm
2121 Ponce De Leon Blvd., Ste. 400
Coral Gables, Florida 33134
(305) 340-0034
eddie@efrlawfirm.com

Benjamin A. Garber, Esquire
(admitted *pro hac vice*)
Justin S. Brooks, Esquire
(admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Fifth Floor
Philadelphia, PA 19103
(215) 568.2000
bgarber@kleinbard.com
jbrooks@kleinbard.com

*Attorneys for Defendant Dane Fine Art, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) generated by the CM/ECF system and paper copies will be sent to those indicated as non-registered participants, on this 13th day of November 2026.

By: s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez

*Attorney for Defendant Dane Fine Art LLC*